179 N.J. Super. 549 (1981)
432 A.2d 947
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROB E. SON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1981.
Decided July 9, 1981.
*551 Before Judges MILMED, FRANCIS and COLEMAN.
Daniel Sugrue argued the cause for appellant (Schuman & Butz, attorneys).
Steven N. Cucci, Assistant Ocean County Prosecutor, argued the cause for respondent (Edward J. Turnbach, Ocean County Prosecutor, attorney for respondent).
The opinion of the court was delivered by COLEMAN, J.S.C. (temporarily assigned).
*552 The novel issue in this case is whether dump trucks must be equipped with mud flaps or mud guards which, in turn, depends upon our interpretation of N.J.S.A. 39:3-79.1. Defendant was issued five summonses for operating dump trucks without mud flaps or mud guards. He was found guilty of all the charges following trial in the Municipal Court of the Township of Lacey. He was again found guilty on review by the Superior Court, Law Division, Ocean County, which heard the case de novo upon the transcript of the sound recording of the municipal court trial. R. 3:23-8(a). Both courts imposed the same penalty  a fine of $15 plus costs of $10 on each of the five violations. This appeal followed.
The facts essential to our determination were stipulated. Two of the summonses issued charged that defendant operated dump trucks without mud flaps and three summonses charged that the trucks were operated without mud guards. Each summons described the body type as dump truck and none of the trucks had mud guards or mud flaps.
On appeal defendant contends that (1) the statute by its terms exempts dump trucks from its requirements and (2) the statutory interpretation urged on behalf of the State would cast doubt on the validity of the statute if it were sustained.
The crucial issue on this appeal involves the proper interpretation of N.J.S.A. 39:3-79.1, which provides:
No person shall operate or cause to be operated any bus, truck, full trailer or semitrailer of registered gross weight exceeding three tons on any public highway unless the same is equipped with suitable metal protectors or substantial flexible flaps on the rearmost wheels, and, in case the rear wheels are not covered at the top by fender, body or other parts of the vehicle, the rear wheels shall be covered at the top by protective means, of such standard type or design and installed in such manner as shall be approved by the Director of the Division of Motor Vehicles in the Department of Law and Public Safety and as shall conform substantially to any requirements of the Interstate Commerce Commission governing similar subject matter, in order to prevent, as far as practical, such wheels from throwing dirt, water or other materials on the windshields of the following vehicles, except in cases in which the motor vehicle is so designed and constructed that the above requirement are accomplished by reason of *553 fender or body construction or other means of enclosure; provided, however, [emphasis in original] this act shall not apply to pole trailers, dump trucks, tanks, or other vehicles where the construction thereof is such that complete freedom around the wheel area is necessary to secure the designed use of the vehicle. [Emphasis supplied]
Defendant argues that the statute automatically exempts all dump trucks as opposed to only those dump trucks which require freedom around the wheel area in order to be fit for the truck's designed use. The Law Division judge adopted the State's position that only those enumerated vehicles which require complete freedom around the wheel area are exempt from the mud guard or mud flap requirement. The judge reasoned that if the Legislature had intended to automatically exempt those types of vehicles which are enumerated in the statute, it would have put a period after the word "tanks."
This statute was enacted in 1952, but the only reported opinion which has interpreted it is State v. Nappi Trucking Corp., 149 N.J. Super. 314 (Cty.Ct. 1977). In Nappi the court held that because "truck-tractor" and "truck" have separate meanings, the former was "not included within the prohibitory parameters of this statute." Id. at 316-317. Hence, Nappi sheds no light on the portion of the statute which is the subject of this appeal.
In 1953 the Attorney General offered the following interpretation to the Director of the Division of Motor Vehicles:
It is my opinion that pole trailers, dump trucks and tanks are joined in a general classification with such other vehicles to be determined by you, the construction of which require complete freedom around the wheel area. Pole trailers, dump trucks and tanks must also be of the type which necessitates such complete freedom as specified in the act; otherwise, they are required to be equipped with mud flaps on the rearmost wheels. [Atty. Gen., Formal Op. 13, April 29, 1953]
The absence of any amendment to a statute following an Attorney General's formal opinion strongly suggests that the views expressed therein were consistent with legislative intent. Scheff v. Maple Shade Tp., 149 N.J. Super. 448, 456-457 (App. Div. 1977), certif. den. 75 N.J. 13 (1977). However, this rule is not absolute but is merely an aid to statutory construction. Cf. *554 Lemke v. Bailey, 41 N.J. 295, 301 (1963). Nonetheless, an Attorney General's interpretation of a statute pursuant to N.J.S.A. 52:17A-4(e) is entitled to considerable weight. Evans-Aristocrat Industries, Inc. v. Newark, 140 N.J. Super. 226, 229-230 (App.Div. 1976), aff'd 75 N.J. 84 (1977). Thus, although the Attorney General's opinion supports the State's position, it is still necessary for this court to undertake an independent analysis of the statute's construction. In so doing, the court is guided by numerous principles of statutory construction.
Since N.J.S.A. 39:3-79.2 provides for either a fine or imprisonment, or both, upon conviction for violation of the statute, it is a statute which is penal and quasi-criminal in nature and therefore must be strictly construed. See Fortugno Realty Co. v. Schiavone-Bonomo Corp., 39 N.J. 382, 392 (1963); State v. Gratale Brothers, Inc., 26 N.J. Super. 581, 584 (App.Div. 1953). However, the statute should still be construed with a view to effectuating the objectives and intentions of the Legislature. State v. Edwards, 28 N.J. 292, 298 (1958); State v. New Jersey (Juvenile), 125 N.J. Super. 566, 568-569 (App.Div. 1973); State v. E.H. Miller Transp. Co., Inc., 74 N.J. Super. 474, 480 (App.Div. 1962), certif. den. 38 N.J. 306 (1962).
In this case the legislative purpose in enacting the statute is clearly set forth within the body of the statute itself: "to prevent, as far as practical, such wheels from throwing dirt, water or other materials on the windshields of the following vehicles." N.J.S.A. 39:3-79.1. Yet, the Legislature still saw fit to provide an exemption, and the court must ascertain exactly what vehicles are included within that exemption. The legislative purpose is tempered by a simultaneous concern of the Legislature that the statute not be impractical or overburdensome in application.
The State argued, and we agree, that looking at the statute as a whole, the legislative intent was to exempt only those dump trucks which needed complete freedom around the rear wheels. Viewed most logically, the statute must be interpreted *555 as listing several vehicles as illustrative of the type which might require complete freedom around the wheel in order to be fit for the designed use. The pertinent language of the statute should be parsed to read: "... provided, however, this act shall not apply to ... vehicles where the construction thereof is such that complete freedom around the wheel area is necessary to secure the designed use of the vehicle." Under this construction it must be demonstrated that the use of mud guards or mud flaps on such vehicle would prevent the designed use of the truck. Based upon our review of the record, we are satisfied that the trial judge's finding that mud flaps did not interfere with the designed use of the dump truck should not be disturbed. State v. Johnson, 42 N.J. 146 (1964).
The statute became effective January 1, 1953 and the Attorney General's opinion was given April 29, 1953. The absence of any amendment to N.J.S.A. 39:3-79.1 following the Attorney General's opinion strongly suggests that the views expressed therein were consistent with the legislative intent. Lemke v. Bailey, supra. The Legislature's acquiescence in the foregoing construction for 28 years and the clear purpose expressed in the statute persuade us that the trial judge correctly interpreted the statute. A construction that would create a per se exemption for dump trucks would be a tortured result that would render impotent the clear intention of the Legislature.
The evidence presented by defendant's safety officer makes this result even more compelling. He admitted that the dump trucks were delivered with mud flaps. He also admitted that when the flaps are destroyed when the truck is operated with a paver they are generally replaced as quickly as possible. The trucks in question were not, however, being used to haul asphalt and dump it into asphalt paving machines at the time the summonses were issued. Instead, these trucks were being used to haul gravel along the highway. Clearly mud flaps would not interfere with this designed use of the dump trucks. We therefore concluded that N.J.S.A. 39:3-79.1 required the dump *556 trucks to be equipped with mud flaps and failure to do so violated the statute.
Finally, defendant's argument that N.J.S.A. 39:3-79.1 is unconstitutionally vague is clearly without merit. We do not find that persons of common intelligence would be required to guess as to its meaning or its application. State v. Profaci, 56 N.J. 346, 350 (1970). "It does not invariably follow, however, that every time someone can create an argument as to the meaning of a penal sanction, the statute is impermissibly vague..." In re De Marco, Suspension, 83 N.J. 25, 36 (1980).
Affirmed.