COLORADO COMMON CAUSE, the Colorado affiliate of Common Cause, a District of Columbia nonprofit corporation, and Rosalie Schiff, a qualified elector of the State of Colorado, Petitioners,

v.

Natalie MEYER, in her official capacity as Colorado Secretary of State, and Colorado Association of Commerce and Industry, a Colorado corporation, Respondents.

No. 86SC279.

Supreme Court of Colorado, En Banc.

May 16, 1988.

Buchanan, Gray, Purvis & Schultze, Ross B.H. Buchanan, Andrew W. Loewi, Denver, Greene, O'Reilly, Broilett, Paul, Simon, McMillan, Wheeler & Rosenberg, Los Angeles, Cal., for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maurice Knaizer, First Asst. Atty. Gen., Denver, for respondent Natalie Meyer.

Holland & Hart, Peter C. Houtsma, Steven C. Choquette, Denver, for respondent Colorado Ass'n of Commerce and Industry.

QUINN, Chief Justice.

The question in this case is whether for-profit corporations which make contributions, contributions in kind, or expenditures to or on behalf of a state political campaign

out of their ordinary corporate treasuries are "political committees" within the meaning of Colorado's Campaign Reform Act of 1974, §§ 1–45–101 to –121, 1B C.R.S. (1980 & 1987 Supp.), and are thus required to comply with the filing and reporting requirements of the Act. In *Colorado Common Cause v. Meyer*, 731 P.2d 744 (Colo. App.1986), the court of appeals held that such corporations are not "political committees" within the meaning of that term in section 1–45–103(10) of the Campaign Reform Act. We reverse the judgment and remand the case with directions.

## I.

In 1974, the Colorado General Assembly enacted the Colorado Campaign Reform Act. Ch. 57, sec. 1, §§ 49–27–101 to –121, 1974 Colo.Sess.Laws 261–70 (currently codified at §§ 1–45–101 to –121, 1B C.R.S. (1980 & 1987 Supp.)). The Act contains the following legislative declaration:

> The general assembly hereby finds and declares that the interests of the people of this state can be better served through a more informed public; that the trust of the people is essential to representative government; and that public disclosure and regulation of certain campaign practices will serve to increase the people's confidence in their elected offi-

cials. Therefore, it is the purpose of this article to promote public confidence in government through a more informed electorate.

§ 1–45–102, 1B C.R.S. (1980).

In order to effectuate this purpose, the Act specifies the circumstances and manner in which candidates, persons, and political committees must disclose contributions received and expenditures made for the purpose of supporting or opposing a candidate for public office at an election, or for the purpose of influencing the passage or defeat of any issue.

A "candidate" is any person who "[s]eeks election to any public office which is to be voted for in this state at any general election, special district election, or municipal election." § 1–45–103(3)(a), 1B C.R.S. (1980). The Act defines a person as "any individual, partnership, committee, association, corporation, labor organization, or other organization or group of persons." § 1–45–103(9), 1B C.R.S. (1980). A "political committee" is defined in section 1–45–103(10), 1B C.R.S. (1980), as follows:

> "Political committee" means any two or more persons who are elected, appointed, or chosen or who have associated themselves or cooperated for the purpose of accepting contributions [1] or contributions in kind [2] or making expendi-

1. A "contribution" is defined in section 1–45–103(4), 1B C.R.S. (1980), as follows:

   "Contribution" means a gift, loan, pledge, or advance of money or a guarantee of a loan made to or for any candidate or political committee for the purpose of influencing the passage or defeat of any issue or the nomination, retention, election, or defeat of any candidate. "Contribution" includes a transfer of any money between one political committee and another; a gift of money to or for any incumbent in public office from any other person, the purpose of which is to compensate him for his public service or to help defray his expenses incident thereto but which are not covered by official compensation; the payment of any money by any person, other than a political committee working on a candidate's behalf, for political services rendered to the candidate or political committee; any payment made to third parties at the request of or with the prior knowledge of a candidate, political committee, or agent of either; and any payment made after an election to meet any deficit or debt incurred during the course

   of the campaign. "Contribution" does not include services provided without compensation by individuals volunteering their time on behalf of a candidate or political committee. Any transfer of money between political committees is an expenditure by the political committee which dispenses the money and is a contribution to the political committee which receives the money.

2. Section 1–45–103(5), 1B C.R.S. (1980), defines "contribution in kind" in the following way:

   "Contribution in kind" means a gift or loan of any item of real or personal property, other than money, made to or for any candidate or political committee for the purpose of influencing the passage or defeat of any issue or the nomination, retention, election, or defeat of any candidate. "Contribution in kind" includes a gift or loan of any item of real or personal property, other than money, to or for any incumbent in public office from any other person, the purpose of which is to compensate him for his public service or to help him defray his expenses incident thereto but

tures [3] to support or oppose a candidate for public office at any election or seek to influence the passage or defeat of any issue. "Political committee" includes any political party or committee thereof at any level or a political organization as defined in section 1–1–104. "Political committee" also includes a separate political education or political action fund or committee which is associated with an organization or association formed principally for some other purpose and *includes an organization or association formed principally for some other purpose insofar as it makes contributions or contributions in kind or expenditures.* (emphasis added).

An "election" means "any general or primary election or any election at which an issue is submitted to the electorate as required or permitted by law." § 1–45–103(6), 1B C.R.S. (1987 Supp.).[4] An "issue" is "any proposition or initiated or referred measure which is to be submitted to the electors for their approval or rejection." § 1–45–103(8), 1B C.R.S. (1980).[5] The Campaign Reform Act provides, in pertinent part, that "[a]ny person who believes a violation of this article has occurred may file a written complaint no later than sixty days after the date of the final report of a candidate or political committee with the secretary of state." § 1–45–113(2), 1B C.R.S. (1980).

On three occasions during the tenure of former Secretary of State Mary Estill Buchanan, the Attorney General's office responded to inquiries by Secretary Buchanan with opinion letters interpreting the emphasized portion of the definition of political committee in section 1–45–103(10) to include for-profit corporations which make contributions, contributions in kind, or expenditures to or on behalf of a political candidate or issue. Accordingly, in late October 1976 Secretary Buchanan sent letters to 333 corporations which had failed to report political contributions made in opposition to ballot issues in the November 1976 general election. In these letters Secretary Buchanan informed the corporations that they were required to follow the disclosure requirements for political committees as specified in the Campaign Reform Act. All but fourteen of the corporations complied, although fifty-six of the corporations filed their reports under protest.

In August 1978 the Secretary of State's office sent a copy of the Attorney General's opinion letter to all political committees registered with the Secretary of State's office. In an accompanying memorandum the Secretary of State stated that corporations making expenditures in support or opposition of candidates or issues are required to comply with the reporting provisions of the Campaign Reform Act.

In 1978, 1980, and 1982, Secretary Buchanan issued manuals to the public containing instructions for complying with the Campaign Reform Act, and these manuals expressly included for-profit corporations within the category of political commit-

---

which are not covered by official compensation. Personal services are a contribution in kind by the person paying compensation therefor; volunteer services are not included. "Contribution in kind" does not include an endorsement of candidacy or issue by any person. In determining the value to be placed on contributions in kind, a reasonable estimate of fair market value shall be used.

3. Section 1–45–103(7), 1B C.R.S. (1980), states:

"Expenditure" means the payment, distribution, loan, or advance of any money or contribution in kind by any candidate, political committee, or agent of either for the purpose of influencing the passage or defeat of any issue or the nomination, retention, election, or defeat of any candidate. "Expenditure"

does not include services provided without compensation by any candidate or political committee or expenditures from the candidate's own funds for his personal or family activities. An expenditure occurs when the actual payment is made or when there is a contractual agreement and the amount is determined.

4. An "election" also includes a recall election, a special district election at which the office to be voted for has an annual compensation of more than $1,200, and a municipal election. § 1–45–103(6), 1B C.R.S. (1987 Supp.).

5. An "issue" includes the recall of any officer as provided by law. § 1–45–103(8), 1B C.R.S. (1980).

tees.[6] The Secretary of State's internal guidelines, however, which apparently were intended only for internal use of the Secretary of State's office, stated that those for-profit corporations which made contributions from corporate general funds to a political committee were exempt from the filing and reporting requirements of the Act, that for-profit corporations which made independent expenditures from corporate general funds to support or oppose candidates or to seek to influence passage or defeat of any issue were not exempt, and that those for-profit corporations which accepted or solicited contributions from any source other than the corporate general funds were also not exempt.

During the 1981 and 1983 legislative sessions, amendments were proposed to the Campaign Reform Act, including language which in various ways partially exempted for-profit corporations from the reporting requirements. In 1981, House Bill 1460 sought to amend the definition of "political committee" by limiting that term to an organization or association which makes contributions or expenditures in excess of "fifty percent of its annual budget to support or oppose candidates for public office at any election or to seek to influence the passage or defeat of any issue." This proposed definition underwent further changes as the bill worked its way through the legislative process,[7] but no part of the bill was ultimately enacted. In 1983, Senate Bill 180 sought to amend various provisions of the Campaign Reform Act without, however, changing the definition of "political committee." The House State Affairs Committee amended the senate version of this bill to include within the definition of a "political committee" the subcategory of "corporation committee," which was defined as "any for profit corporation which associates or cooperates with any other person in receiving contributions or contributions in kind or any for profit corporation which makes expenditures other than to a political committee." This bill, however, was never enacted into law.

On January 28, 1983, Rosalie Schiff, pursuant to section 1–45–113(2), 1B C.R.S. (1980), and acting in the capacity as a qualified elector and as executive director of Colorado Common Cause, which is the Colorado affiliate of Common Cause, a nonprofit corporation organized under the laws of the District of Columbia, sent a letter of complaint to Secretary of State Natalie Meyer, who had recently assumed office. In her letter, Schiff advised Secretary Meyer of her belief that Adolph Coors Company and Colorado Disposal, Inc. had violated the Campaign Reform Act by failing to register as political committees or to file reports of their contributions made to political candidates in the 1982 general election. Secretary Meyer did not conduct an evidentiary hearing, but notified the corporations of the complaint and solicited written responses. On June 16, 1983, Secretary Meyer sent a letter to Schiff and Common Cause notifying them, as well as Adolph Coors Company and Colorado Disposal, Inc., that she was denying the complaint. The Secretary on the same day issued a written statement declaring that the Campaign Reform Act "does not include individuals, partnerships, corporations or labor organizations unless they cooperate with another entity in political activities." Secretary Meyer in her statement pledged to "consistently apply this statute."

In October 1983, Schiff and Colorado Common Cause (hereafter collectively re-

---

6. Publications of the "Colorado Candidate and Political Committee Instruction Manual and the Campaign Reform Act" issued by former Secretary of State Mary Estill Buchanan to the public in 1978, 1980, and 1982 contained the following statement as part of the definition of a political committee:

A political committee includes organizations, corporations, unions, and associations, formed principally for some other purpose, which accepts contributions or makes expenditures in support of or in opposition to any candidate for public office or ballot issue.

7. As amended in the House State Affairs Committee, House Bill 1460 would have required the organization or association to report only if it both received contributions or contributions in kind *and* made expenditures. In a senate amendment, the definition of political committee would have exempted an organization or association which made less than five contributions aggregating less than $2,500.

ferred to as Common Cause) filed a complaint in the Denver District Court pursuant to C.R.C.P. 57(b), naming Secretary Meyer as defendant. The complaint listed several contributions made by Adolph Coors Company and Colorado Disposal, Inc. to political candidates in the 1982 general election, none of which was reported by the corporations under the Campaign Reform Act, and alleged that Secretary Meyer had publicly announced that she would not require such contributing corporations to comply with the filing and reporting requirements of the Act. Common Cause sought a declaratory judgment that corporations which make contributions, contributions in kind, or expenditures to support or oppose a candidate for office at any election are required to file statements of organization,[8] to file reports of contributions and expenditures,[9] and to otherwise comply

8. Section 1–45–106, 1B C.R.S. (1980), provides as follows:

(1)(a) Every political committee supporting or opposing a candidate, statewide issue, or issue shall file a statement of organization with the appropriate officer [*i.e.,* the Secretary of State or the County Clerk and Recorder, § 1–45–103(1), 1B C.R.S. (1980)] no later than fifteen days after opening a bank account as required by section 1–45–107.

(b) For the purposes of paragraph (a) of this subsection (1), a political committee in existence on May 17, 1974, shall file a statement of organization with the secretary of state no later than thirty days after said date.

(2) The statement of organization shall include:

(a) The name, the address, the candidate or issue it supports or opposes, and any other purpose of the committee;

(b) The name and address of the campaign treasurer of the political committee.

(3) Any political committee whose purpose is the recall of any elected official shall file a statement of organization with the appropriate officer no later than fifteen days after opening a bank account. Reports of contributions and expenditures shall be filed with the appropriate officer within fifteen days after the filing of the statement of organization and every thirty days thereafter until the date of the recall election has been established, at which time the political committee shall follow the provisions of section 1–45–108.

9. The reporting requirements for a political committee are set forth in section 1–45–108, 1B C.R.S. (1980), which states:

(1) The campaign treasurer [*i.e.,* the treasurer of any political committee, § 1–45–103(2), 1B C.R.S. (1980)] shall file reports of all contributions received and all expenditures made by or on behalf of such candidate or political committee. Reports shall be filed eleven days before and thirty days after any election. Filings shall be complete as of five days prior to the filing date.

(2) Any incumbent in, or elected candidate to, as defined in section 1–45–103(3), public office who receives any contribution or contribution in kind from any other person, the purpose of which is to compensate him for his public services or to help him defray his expenses incident thereto but which are not covered by official compensation, shall file with the appropriate officer, on or before January 15 of each year, a supplemental report for the preceding calendar year. Such report shall be on forms prescribed by the secretary of state and shall contain substantially the same information as prescribed in subsection (4) of this section.

(3) All reports required by this section shall be filed with the appropriate officer [*i.e.,* the Secretary of State or the County Clerk and Recorder, § 1–45–103(1), 1B C.R.S. (1980)] and shall be open to inspection by the public during regular business hours. Any report which is deemed to be incomplete by the appropriate officer shall be accepted on a conditional basis, and the campaign treasurer shall be notified by registered mail with respect to any deficiencies found. The campaign treasurer shall have seven days from receipt of such notice to file an addendum to the report providing all information deemed necessary to complete the report in compliance with this section.

(4) Each report required by this section shall contain the following information:

(a) The amount of funds on hand at the beginning of the reporting period;

(b) The name and address of each person who has made an aggregate contribution to or for such candidate or political committee within the reporting period in excess of twenty-five dollars or a contribution in kind in excess of one hundred dollars, together with the amount and date of such contribution, or a chronological listing of all contributions and contributions in kind, including the name and address of each contributor;

(c) The total sum of all contributions and contributions in kind to or for such candidate or political committee during the reporting period;

(d) The name and address of each person to whom expenditures have been made by or on behalf of the candidate or political committee within the reporting period in excess of twenty-five dollars, together with the amount, date, and purpose of each such expenditure and the name of and the office sought by each candidate on whose behalf such expenditure was made;

(e) The total sum of all expenditures made by such candidate or political committee during the reporting period;

with the requirements of the Campaign Reform Act. In answering the complaint, Secretary Meyer admitted that she would not require corporations which make contributions or expenditures to or for candidates to comply with the provisions of the Campaign Reform Act. The Colorado Association of Commerce and Industry was permitted to intervene as a defendant due to the effect of any judgment on the corporate businesses which are members of the Association.

The case was submitted to the court on the basis of a joint stipulation of facts and stipulated exhibits. The court entered a judgment declaring that a for-profit corporation which makes contributions or expenditures for the purpose of supporting or opposing a candidate for public office at any election does not constitute a "political committee" within the meaning of section 1–45–103(10) of the Campaign Reform Act.[10] Common Cause appealed to the court of appeals. In affirming the judgment, the court of appeals emphasized that the last sentence in the statutory definition of a "political committee" as set forth in section 1–45–103(10) "does not mention cor-porations," that "the general assembly made no explicit provision to include corporations in this subsection" and that the "goal of disclosure is accomplished by requiring the recipients of the corporate contributions to file reports." 731 P.2d at 746. We granted Common Cause's petition for certiorari to consider whether for-profit corporations which make contributions, contributions in kind, or expenditures to or on behalf of state political campaigns out of their ordinary corporate treasuries are "political committees" within the meaning of the Campaign Reform Act and thus are required to file statements of organization, to file reports of their contributions and expenditures, and to otherwise comply with the filing and reporting requirements of the Act.

## II.

Before directly addressing the question before us, we briefly consider various arguments raised by the parties concerning the significance which this court should attach to the several opinion letters of the Attorney General, the policy declarations of Secretaries of State Buchanan and Meyer, and

(f) The name and address of any bank or other depository for funds used by the candidate or political committee.

(5) The provisions of this section and section 1–45–105 shall not apply to any association, political party, political organization, corporation, labor organization, or other group of persons which receives contributions or contributions in kind from any person through events such as dinners, luncheons, rallies, or other fund-raising events if such contributions or contributions in kind are intended to be given to another organization or group of persons which in turn distributes or contributes such contributions or contributions in kind to one or more candidates or political committees; except that the provisions of paragraph (b) of subsection (4) of this section shall apply to any such organization or group of persons for each individual contribution or contribution in kind which exceeds twenty-five dollars. The reporting provisions of this section shall apply to the organization or group of persons receiving such contributions or contributions in kind.

(5.5) The filing requirements of this section shall not apply to that part of the organizational structure of a political party, as defined in section 1–1–104(18), which is responsible for only the day-to-day operations of such political party at the national level if copies of the reports required to be filed with the federal election commission pursuant to the "Federal Election Commission Act of 1971", as amended, are filed with the secretary of state and include the information required by this section.

(6) Notwithstanding any other reports required under this section, the campaign treasurer shall file reports of any contribution or contribution in kind in excess of five hundred dollars received by the candidate or political committee at any time within sixteen days preceding the election. This report shall be filed or postmarked no later than forty-eight hours after receipt of said contribution.

10. The district court also ruled that the decision of Secretary Meyer was legislative in nature, thus allowing Common Cause to seek a declaratory judgment under C.R.C.P. 57. Because a declaratory judgment action was proper, the district court held that Common Cause's claim was not barred due to the failure to pursue judicial review in accordance with section 24–4–106(4), 10 C.R.S. (1982), of the State Administrative Procedure Act. The court of appeals affirmed this aspect of the district court's ruling, and we denied Secretary Meyer's cross-petition to consider the issue.

the legislature's failure to adopt proposed amendments to the Campaign Reform Act during the 1981 and 1983 legislative sessions.

### A.

■ Common Cause argues that we should give great weight to the Attorney General's written opinions in settling on the proper construction of the statutory definition of a "political committee" in section 1–45–103(10). We are not so persuaded.

Section 24–31–101(1)(b), 10 C.R.S. (1982), requires the Attorney General to give an opinion in writing upon all questions of law submitted by the Secretary of State. Since the Attorney General's opinion is issued pursuant to statutory duty, the opinion is obviously entitled to respectful consideration as a contemporaneous interpretation of the law by a governmental official charged with the responsibility of such interpretation. *See State v. Son,* 179 N.J.Super. 549, 432 A.2d 947 (1981); *School Districts Nos. 2, 3, 6, 9, and 10 v. Cook,* 424 P.2d 751 (Wyo.1967). A court's resolution of an issue of statutory construction, however, must proceed from an independent analysis of the statutory scheme, as must our interpretation of the Campaign Reform Act in this case. *See Leddy v. Cornell,* 52 Colo. 189, 198, 120 P. 153, 156 (1912); *Gershman Investment Corp. v. Danforth,* 517 S.W.2d 33, 35 (Mo.1974).

### B.

■ Secretary of State Meyer and the Colorado Association of Commerce and Industry contend that Secretary Meyer's interpretation of the Colorado Reform Act is entitled to great deference by a reviewing court. *See Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985); *Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976). We reject this contention also.

Although the Secretary of State is charged with the administration and enforcement of the Campaign Reform Act, § 1–45–113, 1B C.R.S. (1980 and 1987 Supp.), the record shows that Secretary Meyer's interpretation of the statutory def-inition of "political committee" as excluding for-profit corporations is directly at odds with the interpretation of that term by her immediate predecessor, Secretary Buchanan. When, as here, the construction of a statute by those charged with its administration has not been uniform, the rule which authorizes courts to give deference to administrative interpretations of a statutory scheme is simply inapplicable. *United States v. Healey,* 160 U.S. 136, 16 S.Ct. 247, 40 L.Ed. 369 (1895); *see also Stephen v. Lail,* 80 Colo. 49, 248 P. 1012 (1926); N. Singer, 2A Sutherland Statutory Construction § 49.05, at 363 (Sands 4th ed. 1984).

### C.

■ Common Cause makes the argument that the General Assembly's refusal to adopt proposed amendments to the Campaign Reform Act so as to exclude for-profit corporations from the filing and reporting requirements of the Act constitutes a compelling demonstration of the General Assembly's intention to include for-profit corporations within the statutory scheme. We remain unpersuaded.

While it is appropriate to consider the legislative history of a statute in determining the purpose or intent of the legislature in enacting the statute, § 2–4–203(1)(c), 1B C.R.S. (1980); *Industrial Commission v. Milka,* 159 Colo. 114, 410 P.2d 181 (1966), the unsuccessful legislative attempts in 1981 and 1983 to amend various sections of the Campaign Reform Act offer us no assistance in construing the definition of "political committee" in section 1–45–103(10). A bill which unsuccessfully attempts to engraft several amendments onto a statute enacted in a previous legislative session sheds no light on the legislative intent underlying the original enactment. *See Tahoe Regional Planning Agency v. McKay,* 769 F.2d 534, 538–39 (9th Cir.1985); *Securities Industry Association v. Federal Home Loan Bank Board,* 588 F.Supp. 749, 759 (D.D.C.1984).

### III.

With these preliminary matters aside, we turn our attention to whether for-profit

corporations which make contributions, contributions in kind, or expenditures to or on behalf of state political campaigns out of their ordinary corporate treasuries are "political committees" within the meaning of the Campaign Reform Act and thus are required to file statements of organization, to file reports of their contributions and expenditures, and to otherwise comply with the filing and reporting requirements of the Act. Longstanding rules of statutory interpretation provide the framework for our analysis of this issue.

A court's primary task in statutory construction is to ascertain and give effect to the legislative purpose underlying a statutory enactment. *E.g., S.G.W. v. People,* 752 P.2d 86, 87 (Colo.1988); *People v. Guenther,* 740 P.2d 971, 975 (Colo.1987); *People v. District Court,* 713 P.2d 918, 921 (Colo. 1986); *Engelbrecht v. Hartford Accident and Indemnity Co.,* 680 P.2d 231, 233 (Colo.1984). To discern legislative purpose we look first to the statutory language, giving words and phrases their plain and ordinary meaning. *E.g., Guenther,* 740 P.2d at 975; *People v. District Court,* 713 P.2d at 921. Where a statutory provision is ambiguous, with the result that the provision might reasonably be construed in more than one way, a court should construe the statute in accordance with the objective sought to be achieved by the legislature. § 2–4–203(1)(a), 1B C.R.S. (1980); *Engelbrecht,* 680 P.2d at 233. In attempting to effectuate the ends for which the statute was enacted, a court may properly consider the consequences of a particular construction. § 2–4–203(1)(e), 1B C.R. S. (1980); *United States v. Wilkinson,* 686 P.2d 790, 792 (Colo.1984); *Mooney v. Kuiper,* 194 Colo. 477, 479, 573 P.2d 538, 539 (1978). Moreover, a statute should be interpreted so as to give consistent, harmoni-ous, and sensible effect to all of its parts. § 2–4–201(1)(b), 1B C.R.S. (1980); *People v. District Court,* 713 P.2d at 921; *Massey v. District Court,* 180 Colo. 359, 364, 506 P.2d 128, 130 (1973).

### A.

■ The controversy in this case centers on the definition of a "political committee" in section 1–45–103(10). The first sentence of that section, which is not at issue here, defines a "political committee" to be any two or more persons who have associated themselves or cooperated for the purpose of accepting contributions or making expenditures to or on behalf of a candidate or issue. The second sentence of section 1–45–103(10), which also is not at issue, states that a "political committee" includes a political party or any committee of a political party. The final sentence of the statutory definition then states in pertinent part as follows:

> "Political committee" also includes a separate political education or political action fund or committee which is associated with *an organization or association formed principally for some other purpose and includes an organization or association formed principally for some other purpose insofar as it makes contributions or contributions in kind or expenditures.* (emphasis added).

The parties agree, as do we, that the first part of this final sentence—*i.e.,* "a separate political education or political action fund or committee which is associated with an organization or association formed principally for some other purpose"—refers to political action committees (PACs), which are creatures of federal law under the Federal Election Campaign Act of 1971, 2 U.S.C. §§ 431 to 455 (1982).[11] The obvi-

**11.** We note that direct contributions from the general funds of a corporation in federal elections have long been prohibited under section 316 of the Federal Election Campaign Act, 2 U.S.C. § 441b (1982). Corporations, however, may nevertheless establish and administer PACs as separate, segregated funds for purposes of making such contributions. The PACs then must register as political committees and file required reports with the Federal Election Commission. In *Federal Election Commission v.* *Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), the United States Supreme Court held that section 316 of the Federal Election Campaign Act, 2 U.S.C. § 441b, which prohibits corporations from using treasury funds to make an expenditure in connection with any election for public office, could not be constitutionally applied to Massachusetts Citizens for Life (MCFL), a non-profit corporation formed for the purpose of

ous meaning of this part of section 1–45–103(10) is that a PAC associated with "an organization or association formed principally for some other purpose," such as a corporation or labor organization, is a "political committee" under the terms of Colorado's Campaign Reform Act.

The critical language in this case is that part of section 1–45–103(10) which defines a political action committee as including "an organization or association formed principally for some other purpose insofar as it makes contributions or contributions in kind or expenditures." This language contains a repetition of that part of the immediately preceding language which refers to "an organization or association formed principally for some other purpose" with which a separate political education or political action fund committee is associated. It is a well settled rule that when, as here, the legislature employs the same words or phrases in different parts of a statute, then, in the absence of any manifest indication to the contrary, the meaning attributed to the words or phrases in one part of the statute should be ascribed to the same words or phrases found elsewhere in the statute. *Kifer v. Liberty Mutual Insurance Co.,* 777 F.2d 1325 (8th

Cir.1985); *Hodgson v. Prophet Co.,* 472 F.2d 196 (10th Cir.1973); *Supervisor of Assessments v. Chase Associates,* 306 Md. 568, 510 A.2d 568 (1986); *Board of Supervisors v. Marshall,* 215 Va. 756, 214 S.E.2d 146 (1975). This rule of consistent usage, which is a corollary of the principle that a statute should be interpreted so as to give consistent and harmonious effect to all of its parts, *see People v. District Court,* 713 P.2d at 921; *Massey,* 180 Colo. at 364, 506 P.2d at 130, should have even more force where the identical words or phrases appear within the same sentence of a statutory definition. Were we to interpret the definitional reference to "an organization or association formed principally for some other purpose" in the last part of section 1–45–103(10) as excluding for-profit corporations, the rule of consistent interpretation would impel us to interpret the identical language in the first part of section 1–45–103(10) as also excluding for-profit corporations from the definition of a "political committee." Such an interpretation, however, would result in exempting from the filing and reporting requirements of the Campaign Reform Act the great majority of PACs, a consequence which would be virtually irreconcilable with the goal of

promoting respect for human life through political, educational, and other activities, which prepared and distributed a "Special Election Edition" of its newsletter in which it urged its readers to vote "pro life" by voting for certain listed candidates. In holding that the application of the regulatory scheme *to MCFL* would violate its First Amendment rights to political speech, the Court observed:

Regulation of corporate political activity thus has reflected concern not about use of the corporate form *per se,* but about the potential for unfair deployment of wealth for political purposes. Groups such as MCFL, however, do not pose that danger of corruption. MCFL was formed to disseminate political ideas, not to amass capital. The resources it has available are not a function of its success in the economic marketplace, but its popularity in the political marketplace. While MCFL may derive some advantages from its corporate form, those are advantages that redound to its benefit as a political organization, not as a profit-making enterprise. In short, MCFL is not the type of "traditional corporatio[n] organized for economic gain" ... that has been the focus of regulation of corporate political activity.

\* \* \* \* \* \*

In particular, MCFL has three features essential to our holding that it may not constitutionally be bound by § 441b's restriction on independent spending. *First,* it was formed for the express purpose of promoting political ideas, and cannot engage in business activities. If political fundraising events are expressly denominated as requests for contributions that will be used for political purposes, including direct expenditures, these events cannot be considered business activities. This ensures that political resources reflect political support. *Second,* it has no shareholders or other persons affiliated so as to have a claim on its assets or earnings. This ensures that persons connected with the organization will have no economic disincentive for disassociating with it if they disagree with its political activity. *Third,* MCFL was not established by a business corporation or a labor union, and it is its policy not to accept contributions from such entities. This prevents such corporations from serving as conduits for the type of direct spending that creates a threat to the political marketplace.

479 U.S. at 259, 263–64, 107 S.Ct. at 628, 631, 93 L.Ed.2d at 557, 560 (footnotes and citation omitted).

public disclosure that the statute was designed to accomplish.

We must assume that the General Assembly purposefully used the language in question to apply to certain types of organizations or associations not encompassed by the preceding parts of the statutory definition of "political committee." In our view, the most plausible construction of the language "an organization or association formed for some other purpose" is that the statutory definition of a "political committee" was intended to include a for-profit corporation insofar as such corporation makes contributions, contributions in kind, or expenditures to or on behalf of a political candidate or issue. Such construction gives meaning and purpose to the language in question by extending the reach of the statutory definition to organizations and associations not included within the preceding parts of the definition.

Our construction finds support in the legislative language employed in the definition of "person." Section 1–45–103(9), 1B C.R. S. (1980), defines a person as "any individual, partnership, committee, association, corporation, labor organization, *or other organization or group of persons.*" (emphasis added). The words "other organization" and "group of persons" are general terms which follow the particular types included within the defined class—*i.e.,* partnership, committee, association, corporation, and labor organization. Where, as here, general words follow a particularized enumeration of types, the interpretative rule of *ejusdem generis* counsels that the general words, at least in the absence of any manifest legislative intent to the contrary, should be construed "as applicable only to persons or things of the same general nature or class as those enumerated." *Martinez v. People,* 111 Colo. 52, 57–58, 137 P.2d 690, 692–93, (1943); *see also Climax Dairy Co. v. Mulder,* 78 Colo. 407, 413–14, 242 P. 666, 669 (1925). Since a for-profit corporation is

a specific type of "organization" included within the definition of person in section 1–45–103(9), the term "organization" in the statutory definition of "political committee" must also have been intended to encompass a corporation. *See* Black's Law Dictionary 999 (5th ed. 1979) (defining "organization" as including a corporation). A corporation, therefore, is explicitly a "person" under section 1–45–103(9), and also, when organized principally for some purpose other than making contributions, contributions in kind, or expenditures to or on behalf of a political candidate or issue, is a "political committee" within the meaning of that term in section 1–45–103(10) insofar as the corporation makes contributions, contributions in kind, or expenditures for the purpose of supporting or opposing a political candidate or issue.

The construction we herein adopt fully accords with the legislative purpose sought to be achieved by the Campaign Reform Act.[12] One of the best guides to a legislative purpose is the legislature's statement of purpose or intent. *St. Luke's Hospital v. Industrial Commission,* 142 Colo. 28, 32, 349 P.2d 995, 997 (1960). In enacting the Campaign Reform Act, the General Assembly declared that the purpose of the Act is to "promote public confidence in government through a more informed electorate." § 1–45–102, 1B C.R.S. (1980). After noting that the trust of the people is essential to representative government, the General Assembly expressly declared that "public disclosure and regulation of certain campaign practices will serve to increase the people's confidence in their elected officials." *Id.* The Campaign Reform Act seeks to accomplish the promotion of public confidence in government through a more informed electorate by establishing a variety of filing and reporting requirements for contributions, contributions in kind, and expenditures to or on behalf of a political candidate or issue. Some of these requirements are directed solely at individuals

12. Tape recordings of the committee and floor discussions concerning the Campaign Reform Act shed little light on the specific question posed by this case. It is clear, however, that the intent of the legislature was focused on as complete a disclosure as possible of the financing which influences the outcome of elections.

Moreover, the bill was presented for the final votes in the two houses with the belief that it was "the most thorough and loophole-proof campaign reform bill ever passed in the United States." Tape of Conference Committee, April 23, 1974, House Conference Room G, at 15:09.

seeking public office, *see* § 1–45–105(1), 1B C.R.S. (1987 Supp.) (requiring candidate to file affidavit and report contributions and expenditures); other requirements are directed solely to political committees, *see* § 1–45–106(1), 1B C.R.S. (1980) (requiring political committee to file statement of organization); and still others are expressly directed to individual candidates and political committees, *see* § 1–45–108(1), 1B C.R. S. (1980) (requiring campaign treasurer of candidate and political committee to file report of all contributions received and all expenditures made).

In excluding for-profit corporations from the regulatory scheme, the court of appeals was of the view that the goal of disclosure would be adequately accomplished by "requiring the recipients of the corporate contributions to file reports." 731 P.2d at 746. In our view, if the General Assembly had been convinced that its goal of promoting public confidence in government through a more informed electorate would be achieved by requiring only the *recipients* of contributions to file reports, rather than those making the contributions and expenditures, it would not have repeatedly made reference to the *making* of contributions and expenditures. *See, e.g.,* § 1–45–105(1), 1B C.R.S. (1987 Supp.) ("[a]ny contributions or expenditures *received or made*"); § 1–45–108(1), 1B C.R.S. (1980) ("all contributions *received* and all contributions *made*") (emphasis added). Specifically, if the legislature intended the filing and reporting requirements to be limited to recipients' reports alone, the language used at the very end of the statutory definition of "political committee" in section 1–45–103(10)—"insofar as it *makes contributions or contributions in kind or expenditures*" (emphasis added)—would be meaningless, as would those other provisions of the Act which require the reporting of contributions and expenditures by political committees. *See, e.g.,* §§ 1–45–106(3) and –108(1), 1B C.R.S. (1980). Requiring for-profit corporations to report contributions and expenditures not only fosters public confidence in government through a more informed electorate, *see* § 1–45–102, 1B C.R.S. (1980), but also serves as a critical crosscheck for ensuring the accuracy and completeness of reporting by candidates and other recipients of corporate contributions.

### B.

Secretary Meyer and the Colorado Association of Commerce and Industry have proffered several alternative arguments in support of a contrary construction. We find these arguments legally unsound.

The argument is made that a for-profit corporation was not intended to be included in the statutory definition of "political committee" in section 1–45–103(10) because only the terms "organization" and "association," rather than "corporation," are expressly mentioned in the last sentence of the statutory definition. Any residual ambiguity arguably imputable to the term "organization" is fully resolved in this case by construing the term "organization" in light of the entire statutory scheme and the legislative objective sought to be achieved by the Act. When the term "organization" is viewed in light of the statutory scheme and goal, we are satisfied that the term embraces a for-profit corporation.

The argument is also made that the first sentence of the statutory definition of "political committee" in section 1–45–103(10)—*i.e.,* " '[p]olitical committee' means any *two or more persons* ... who have associated themselves or cooperated *for the purpose* of accepting contributions or contributions in kind or making expenditures" (emphasis added)—controls the remaining sentences in the statutory definition of "political committee." Considering the fact that a corporation is included within the definition of "person" in section 1–45–103(9), 1B C.R.S. (1980), the logic of this argument leads to the conclusion that the last sentence in the statutory definition of "political committee" should only apply to two or more corporations who associate with each other for the purpose of accepting contributions or making expenditures. This proposed construction, however, ignores the fact that the last sentence of the definition of "political committee" in section 1–45–103(10) begins with the words " '[p]olitical committee' also includes," and the second clause of this last sentence is likewise preceded by the words "and includes." The

**164**

word "includes" has been found by the overwhelming majority of jurisdictions to be a term of extension or enlargement when used in a statutory definition. *See, e.g., Lyman v. Town of Bow Mar*, 188 Colo. 216, 533 P.2d 1129 (1975); *Phelps v. Sledd*, 479 S.W.2d 894 (Ky.1972); *see* N. Singer, 2A Sutherland Statutory Construction § 47.07. The use of "includes" in the statutory definition of "political committee," therefore, connotes that something else is encompassed by the definition beyond what was previously covered by the immediately preceding language. *Phelps*, 479 S.W.2d at 897. We are convinced that the limitation in the first sentence of section 1–45–103(10)—two or more persons associating for a purpose—does not circumscribe the construction of what is "also include[d]" in the last sentence of the statutory definition.

The Secretary of State and the Association of Commerce and Industry also make the argument that the emphasis in the first sentence of the statutory definition of "political committee" is on the fact that the association be "for the purpose" of accepting contributions or making expenditures, and that this same emphasis should control the interpretation of the language in the last sentence of the statutory definition, which states that the association be "formed principally for some other purpose." To accept this interpretation, however, would fly directly in the face of the statutory language used in the last sentence of section 1–45–103(10), which is that a "political committee" also includes an organization "formed principally for some other purpose"—*i.e.*, some purpose other than making contributions or expenditures to support or oppose a candidate for public office at an election or to seek the passage or defeat of an issue—insofar as such organization makes contributions, contributions in kind, or expenditures.

We will not construe the Campaign Reform Act in such a way as to nullify a critical part of the statutory definition of a political committee when, as here, that part of the definition was obviously intended to play a vital role in effectuating the statutory goals which the General Assembly sought to achieve by the Act.

## IV.

In summary, we construe the term "political committee" in section 1–45–103(10) of the Campaign Reform Act to include a for-profit corporation which makes contributions, contributions in kind, or expenditures to or on behalf of state political campaigns out of its ordinary corporate treasury. The Campaign Reform Act requires such a corporation to file a statement of organization, to report its contributions, contributions in kind, and expenditures, and to otherwise comply with the filing and reporting requirements of the Act. We accordingly reverse the judgment of the court of appeals and remand the case to the court of appeals with directions to return the case to the district court for entry of a declaratory judgment consistent with the views herein expressed.