BACKGROUND
This issue arises in the context of the Mined Land Reclamation Board's issuance of a mining permit rider stipulating that an applicant must conduct a cultural resource survey on private land in order to comply with the Register of Historic Places Act, section 24-80.1-101 et seq., C.R.S. (1988), before mining activities can commence.
In 1993, the Moffat County Road Department applied for the issuance of a Reclamation Permit to engage in the mining of gravel at a privately owned site known as Cross Mountain Pit No. 1. This property is neither nominated to nor listed in the State Register of Historic Properties. Pursuant to section 24-80.1-104, C.R.S. (1988), the Mined Land Reclamation Board sent notice of this application to the Colorado Historical Society ("CHS"). On March 23, 1993, James E. Hartmann, in his capacity as the President of CHS, reviewed the application and issued the following recommendation:
 A search of the Colorado Cultural Resource Inventory has indicated that there are no known sites located within the boundaries of this project. However, the location of this mining operation is on a bench above a major river which makes it highly probable that prehistoric and historic sites may be present. If there have been no extensive land altering activities in the project area, we recommend that a cultural resource survey be undertaken to determine if eligible cultural resources will be impacted by mining activities. This is done in accordance with the Colorado Register of Historic Places Act (24-80.1).
Pursuant to section 24-80.1-104(2)(b), C.R.S. (1988), the Mined Land Reclamation Board had 30 days to reject this recommendation of CHS and attempt to negotiate a satisfactory agreement with CHS. It chose not to do so. Instead, on July 1, 1993 the Board issued the Moffat County Road Department a Mining Permit, conditioned upon Moffat County paying for a cultural resource survey on the privately owned property in question and providing such survey to the CHS. The CHS would then review the survey, and either clear the site for mining or work out a plan of mitigation with the applicant. Proof of site clearance or mitigation would have to be provided to the Mined Land Reclamation Board prior to mining, and a revision of the application might be necessitated if site mitigation alters the mining or reclamation plan.
The Moffat County Road Department has chosen to challenge this condition to its mining permit. On December 1, 1994, Moffat County petitioned the Mined Land Reclamation Board ("Board") for a "Declaratory Order" that CHS is without statutory authority to review and comment on agency actions unless such actions adversely affect a property nominated to or listed in the State Register of Historic Properties.[1]
At a hearing before the Board on December 14, 1994, Dr. Susan Collins of CHS argued that CHS had not received timely notice of the hearing as required under Board Rules. The Board deferred the hearing regarding Moffat County's request until its February Board meeting, in order to provide CHS adequate notice. The Board also asked that CHS request a formal attorney general's opinion regarding this issue. CHS then made this request of our office.
ANALYSIS
The Register of Historic Places Act, section 24-80.1-101 to 108, C.R.S. (1988) (the "Act"), was enacted by the Colorado General Assembly in 1975. The Act declares the preservation of sites and structures of historical significance to be in the interest of the citizens of the State, and that the planning and activities of state agencies provide for the preservation of such resources to the extent possible. Section 24-80.1-101, C.R.S. (1988).
The Act creates a State Register of Historic Properties, to be administered by CHS. Properties may be nominated for inclusion on the State Register by the property owner, a local government, a State agency, or by CHS. Section 24-80.1-105(1), C.R.S. (1988). In all cases, the written approval of the owner of the property is required for nomination or inclusion in the State Register. Section 24-80.1-107(2), C.R.S. (1988).
The legal issue presented involves the statutory interpretation of the scope of protection of historic resources under section 24-80.1-104, C.R.S. (1988), which states in relevant part as follows:
 Effect of state register. (1) Properties nominated for inclusion in or accepted by the state register shall be protected from any action
initiated by a state agency until a final determination concerning the effect of such action on such properties is made pursuant to subsection (2) of this section.
 (2) (a) At the earliest stage of planning or consideration of a proposed action or when it is anticipated that properties of historical significance may be adversely affected in the course of an agency action and in all cases prior to an agency decision concerning an action that may have an effect on properties listed in the state register, the agency initiating the action shall identify such properties located within the area of the proposed action, notify the society of the proposed action, request a determination of effect on such properties, and afford the society a period of thirty days in such to review the proposed action. Comments made by the society which include specific recommendations to prohibit or alter all or some aspects of the proposed action shall be implemented by the agency subject to paragraphs (b) and (c) of this subsection (2).
(Emphasis added). If the agency rejects some or all of the recommendations of CHS, the agency and CHS are afforded a period of 30 days to negotiate a satisfactory agreement. If no agreement is reached, either the agency or CHS may appeal to the governor for a final determination. Section 24-80.1-104(b) and (c), C.R.S. (1988).
The primary goal of statutory construction is to effect the intent of the General Assembly. Water Quality Control Div.v. Casias, 843 P.2d 665 (Colo.App. 1992). To determine legislative purpose we first look to the statutory language itself, giving words and phrases their commonly understood meaning. Shapiro and Meinhold v. Zartman, 823 P.2d 120
(Colo. 1992). Subsection (1) of section 24-80.1-104 states that it is "properties nominated for inclusion in or accepted by the state register" which shall be protected from state action pending a final determination pursuant to subsection (2). This statutory language, on its face, indicates that the protection afforded by the Act extends only to properties nominated or already included on the State Register, and by implication does not extend to those properties not nominated or included. Furthermore, the title of a statute, although not dispositive, may be used as an aid in construing a statute. Martinez v.Continental Enterprises, 730 P.2d 308 (Colo. 1986). Here, the title of section 24-80.1-104 is "Effect of state register". Again, this is indicative that the protection afforded by the Act extends only to State Register properties.
However, subsection (2) states that the agency considering an action must notify CHS "when it is anticipated that properties of historical significance may be adversely affected in the course of an agency action and in all cases prior to an agency decision concerning an action that may have an effect on properties listed in the state register" (emphasis added). Furthermore, "historical significance" is defined by the Act as "having importance in the history, architecture, archaeology, or culture of this state or any political subdivision thereof of the United States, as determined by the society". Section 24-80.1-102(6), C.R.S. (1988). "Properties" is defined as resources of various types having historical significance, and is not limited by the statutory definition to properties listed on the State Register. Section 24-80.1-102(10), C.R.S. (1988). This statutory language would seem to require notification and consultation with CHS in two different circumstances: when the proposed action would affect properties of historical significance, whether or not listed on the State Register, and when the proposed action would have an effect on a State Register property.
Furthermore, once such a property is identified, the agency must notify the society of its proposed action, request from the society a determination of "effect" on the property, and allow the society 30 days to "review" the proposed agency action. This notification must, by statute, include sufficient and relevant information needed to make a determination of "effect". "Effect" is defined by the Act as "any change in the quality of the historical, archaeological, or architectural character thatqualified property for entry in the stateregister." "Review" is defined by the Act as "the examination of information related to agency actions in order to assess the effect of such actions on properties listed inthe state register." Section 24-80.1-102(5) and (11), C.R.S. (1988) (emphasis added). These definitions would indicate that CHS's review is limited to those properties listed in the State Register.
These statutory provisions create an ambiguity in the scope of the consultation requirement. Ambiguities may be resolved by consideration of legislative history. Rowe v. People,856 P.2d 486 (Colo. 1993). In particular, legislative intent may be inferred from an examination of successive drafts of a bill or statute. S.W. Devanney Co., Inc. v. Griffin,757 P.2d 1088 (Colo.App. 1988), aff'd, 775 P.2d 555
(Colo. 1989). Contemporaneous statements of individual legislators are also highly indicative of legislative intent.See Archer Daniels Midland Co. v. State,690 P.2d 177 (Colo. 1984).
As originally introduced, subsection 24-80.1-104(2)(a) of House Bill 1561, which enacted the Register of Historic Places Act, read as follows:
 (2)(a) Any state agency that intends to initiate action involving property nominated to or accepted by the state register shall notify the society and the land use commission of such proposed action no later than thirty days prior to commencement of such action. . .
House Bill 1561 was substantially amended during the second reading in the House, where the following language was substituted:
 (2)(a) At the earliest stage of planning or consideration of a proposed action or when it is anticipated that properties of historical significance may be affected in the course of an agency action and in all cases prior to an agency decision concerning an action that may have an effect on properties listed, nominated, or eligible to be listed in the state register. . .
An amendment by Senator Noble was then approved by the House inserting the word "adversely" after the word affected and deleting the words "nominated, or eligible to be listed". Senator Noble explained this amendment by stating:
 Mr. Chairman, I would move the adoption of these amendments . . . this amendment. What this runs into is in the planning and consideration . . . It's merely saying that they should be adversely affected, and the second one is deleting the words "nominated or eligible to be listed" because I think that's very broad and could leave everything wide open. So, I would move adoption of those amendments.
Remarks of Senator Noble, Second Reading of the House (Apr. 24, 1975).
Indeed, throughout debate on House Bill 1561, concerns regarding the scope of authority being delegated to CHS was a primary concern. In explaining the bill, Representative Jack McCroskey, a House sponsor of the bill, explained that the bill would not affect private parties, and that the only power given to CHS was to delay state action by up to 90 days. Remarks of Representative Jack McCroskey before House State Affairs Committee (Apr. 10, 1975).
During consideration before the Senate State Affairs Committee on May 17, 1975, the bill was amended to require the owner's consent for property to be nominated for or included in the State Register. The stated reason for this amendment was so that development of property could not be held up by a non-owner's nomination. In testifying regarding this amendment, Cynthia Emrick, a Preservation Assistant at CHS, stated that the effect of this law on property owner's rights would be "nil", and that it was not intended to protect property from its current owners. She indicated that property would only be protected through consultation with CHS if the owner gives consent and the property is nominated for inclusion or is already on the register.
During the Second Reading of the House, Representative McCroskey explained that the bill would establish a state historical register, give CHS the responsibility of setting up and managing the registry, and that:
 The way a property gets on it is through nomination by public agencies or by private organizations such as Historic Denver. Criteria for acceptance will include association with some important events of the past, or important people of the past. In addition to the registry, and establishing it, it does give the Historical Society the opportunity to delay some actions, which might damage these properties, for up to a maximum of 90 days.
Finally, the Fiscal Note prepared by the Executive Budget Office on House Bill 1561 indicated that the bill required implementation of the following activities in fiscal year 1975-1976:
 The implementation of a program designed to provide review and comment on property nominated for inclusions in the State preservation plan. Application submissions will commence on January 1, 1976.
Therefore, the legislative history of House Bill 1561, as evidenced by successive drafts of the bill itself, contemporaneous statements by individual legislators, testimony of CHS personnel, and the Fiscal Note all strongly indicate a legislative intent that the consultation requirement included in the bill only extend to properties nominated to or included in the State Register.
This also appears to have been the initial interpretation of the CHS. In a publication of CHS entitled "Historic Preservation in Colorado" published in 1977, CHS described the Register of Historic Places Act as follows:
 Colorado Revised Statutes (1973) 24-80.1-101 to 24-80.1-108 and 39-1-104, enacted in 1975 authorizes the Society to expand and maintain a State Register of Historic Properties and to establish the ways and means by which sites listed in the register are to be protected from state authorized or funded projects, which would not be beneficial to them.
(Emphasis added). Although specifically authorized to do so by the Act, CHS declined to promulgate rules and regulations implementing the Act until 1990. At that time, CHS promulgated rules containing the following provisions:
 7.1 At the earliest stages of planning or consideration of a proposed action, the agency initiating the action should contact the Society to determine whether properties of historical significance may be located within the area of the proposed action.
 7.2 When a state agency action may adversely affect a property fifty or more years old, the agency should seek the Society's determination as to whether such property is of historical significance. If the property is determined to be of historical significance as defined in C.R.S. 24-80.1-102(6), the agency shall request the Society's determination of effect on such property. C.R.S. 24-80.1-104(2)(a).
 7.3 As provided in C.R.S. 24-80.1-104, state agencies considering actions which may have an effect on a property or properties included in the State Register shall notify the Society in writing of the proposed actions and shall request the Society's determination of effect on such properties.
8 CCR 1504-5 (11-90). These regulations contain an independent reporting requirement when any property of historical significance is adversely affected, in addition to properties nominated to or listed on the State Register.
The construction of a statute by the administrative officials charged with its enforcement is generally given deference by the courts. Bluewater Ins. Ltd. v. Balzano,823 P.2d 1365 (Colo. 1992). However, when the construction of a statute by those charged with its administration has not been uniform, this rule of deference to administrative interpretation is inapplicable. Colorado Common Cause v. Meyer,758 P.2d 153 (Colo. 1988). In this case, there is no evidence that CHS believed the use of the term "historical significance" in subsection 104 gave rise to an independent reporting requirement prior to 1990. Indeed, it appears that CHS's original interpretation of subsection 104 was that the protection to properties of historical significance contained in that section applied only to properties nominated to or included in the State Register.
Based on the above analysis, state agencies must notify CHS at the earliest stage of planning or consideration of a proposed action which may affect properties of historic significance. This notification must be reasonably calculated to identify any such properties located within the area of the proposed action. Within 30 days, CHS must then identify any properties within the area of the proposed action which have been nominated to or listed in the State Register. If no such properties exist within the area of proposed action, then CHS lacks jurisdiction to issue specific recommendations to prohibit or alter all or some aspects of the proposed action pursuant to section 24-80.1-104(2)(b), C.R.S. (1988).[2]
If nominated or listed properties which may be adversely affected by the proposed action are found by CHS within the area, the CHS may issue recommendations to prohibit or alter all or some aspects of the proposed action. The agency may then reject some or all of CHS's recommendation, and is afforded thirty days to negotiate a satisfactory agreement with CHS. Section24-80.1-104(2)(b), C.R.S. (1988). In no agreement is reached, an appeal may be made to the governor for a final determination. Section 24-80.1-104(2)(c), C.R.S. (1988).
SUMMARY
Based on the above analysis, it is our conclusion that CHS lacks the statutory authority under section 24-80.1-104, C.R.S. (1988) to require a cultural resource survey before mining activities can be undertaken on private lands that are neither nominated to, nor listed in, the State Register. Rather, the consultation requirements in subsection 104 extend only to those properties nominated for inclusion in or listed in the State Register.
Sincerely,
 GALE A. NORTON Attorney General
 ANTONY B. DYL First Assistant Attorney General Human Resources Section
HISTORIC SITES EDUCATION, HIGHER MINES AND MINING
Section 24-80.1-104, C.R.S.
HIGHER EDUCATION, DEPT. OF
Colorado Historical Society lacks the statutory authority to require cultural resources surveys before mining can commence on private lands that are neither nominated to nor listed in the State Register of Historic Properties.
[1] Since the Board is not the agency promulgating the CHS regulations, nor the agency charged with their administration, the Board is not the proper state agency to interpret either the Act or the CHS regulations. Consequently, the Board is without jurisdiction to determine Moffat County's request for a declaratory order interpreting the Act or ruling on the validity of CHS regulations.
[2] CHS may, of course, pursue alternative courses for the preservation of properties of historical significance not nominated to or listed in the State Register, including suggesting nomination of such properties and/or negotiating the funding for a cultural resource survey or other preservation activities through a preservation grant from the State Historic Fund pursuant to section 12-47.1-1201, C.R.S. (1991).