Mary E. HUDDLESTON, Property Tax Administrator, Intervenor/Petitioner,

and

TCI Satellite Entertainment, Inc.; and Colorado State Board Of Assessment Appeals, Petitioners,

v.

BOARD OF EQUALIZATION OF MONTEZUMA COUNTY, Respondent.

Mary E. Huddleston, Property Tax Administrator, Intervenor/Petitioner,

and

Coca–Cola, Inc.; and Colorado State Board of Assessment Appeals, Petitioners,

v.

The City and County of Denver, a municipal corporation; and the Denver County Board of Equalization, Respondents.

Mary E. Huddleston, Property Tax Administrator, Intervenor/Petitioner,

and

BFI of Colorado, Inc., n/k/a BFI Waste Systems of North America, Inc.; and Colorado State Board of Assessment Appeals, Petitioners,

v.

The City and County of Denver, a municipal corporation; and the Denver County Board of Equalization, Respondents.

Mary E. Huddleston, Property Tax Administrator, Intervenor/Petitioner,

and

Coors Brewing Company and Colorado State Board of Assessment Appeals, Petitioners,

v.

The City and County of Denver, a municipal corporation; and the Denver County Board of Equalization, Respondents.

Nos. 00SC417, 00SC579, 00SC580, 00SC581.

Supreme Court of Colorado, En Banc.

Sept. 10, 2001.

Ken Salazar, Attorney General, Larry A. Williams, First Assistant Attorney General, Denver, CO, Attorneys for Intervenor/Petitioner Mary Huddleston, Property Tax Administrator.

Morrison & Foerster, LLP, Thomas H. Steele, Neil I. Pomerantz, Denver, CO, Attorneys for Petitioner TCI Satelite Entertainment, Inc.

Victor F. Boog, P.C., Victor F. Boog, Linda A. Battalora, Lakewood, CO, Attorneys for Petitioners Coca–Cola and Coors Brewing Company.

Baker & Hostetler, LLP, D. Rico Munn, Denver, CO, Attorneys for BFI of Colorado.

Bob D. Slough, Montezuma County Attorney, Cortez, CO, Attorney for Respondent Board of Equalization of Montezuma County.

J. Wallace Wortham, Jr., City Attorney, Maria Kayser, Assistant City Attorney, Alice J. Major, Assistant City Attorney, Denver, CO, Attorneys for Respondent The City & County Denver.

Holland & Hart, LLP, Alan Poe, Greenwood Village, CO, Attorneys for Amicus Curiae Automatic Laundry Company, LTD.

Justice COATS delivered the Opinion of the Court.

Four corporate taxpayers sought review by certiorari of separate court of appeals' judgments reversing decisions of the state board of assessment appeals.[1] In each case, the board had ordered county assessors to apply the $2,500 personal property tax exemption of section 39–3–119.5, 11 C.R.S. (2000), on a per-business location basis prescribed by the Property Tax Administrator, which significantly reduced the assessed value of the taxpayer's taxable personal property in the county. The court of appeals held that section 39–3–119.5 did not contemplate separate exemptions for property at different business locations, at least where multiple locations were listed on a single personal property schedule. Because section 39–3–119.5, when read in conjunction with the entire statutory scheme, provides a personal property tax exemption only for businesses owning not more than $2,500 in otherwise non-exempt property in the same county, and does not delegate to the Property Tax Administrator the discretion to determine which personal property would otherwise have to be listed on a single schedule, the judgments of the court of appeals are affirmed.

## I.

These four actions arise out of varying interpretations of the personal property tax exemption set forth at section 39–3–119.5, 11 C.R.S. (2000), enacted in 1996. *See* ch. 296, sec. 1, § 39–3–119.5, 1996 Colo. Sess. Laws 1847, 1847. Upon initial review of the new exemption in 1996, the Property Tax Admin-

istrator issued a memorandum to all county assessors, instructing them to apply the exemption only if the total actual value of the taxpayer's taxable property were capable of being listed on one personal property declaration and did not exceed $2,500. In 1997, the Administrator issued another memorandum, which instructed assessors to apply the exemption by business location, on the assumption that a separate personal property schedule could be filed for each of such locations. The Administrator defined "business location" as "the situs location of the property as of the January 1 assessment date." Portions of the Assessors' Reference Library Manuals[2] were amended to reflect the Administrator's revised interpretation of section 39–3–119.5.

After distribution of the second memorandum, the assessors in the two respondent counties continued to assign values to the subject property based on a per-schedule formula[3] rather than a business-location basis. As applied to Petitioners—TCI Satellite Entertainment, Inc., BFI of Colorado, Inc., Coca-Cola, Inc., and Coors Brewing Company—this business-location formula produced a substantially smaller exemption than would have resulted from the per-business-location formula. The petitioner-taxpayers sought review of these assessed values by the respective counties' boards of equalization, claiming exemptions under section 39–3–119.5 on a business-location basis. After approval by the boards of equalization, the originally assessed personal property values were challenged again before the state board of assessment appeals, which ordered the

---

1. *TCI Satellite Entm't, Inc. v. Bd. of Equalization,* 9 P.3d 1179 (Colo.App.2000); *Coca-Cola Enters., Inc. v. City & County of Denver,* No. 99CA1101, (Colo.App. June 15, 2000) (not selected for publication); *BFI of Colo., Inc. v. City & County of Denver,* No. 99CA1033, (Colo.App. June 15, 2000) (not selected for publication); *Coors Brewing Co. v. City & County of Denver,* No. 99CA1059 (Colo. App. June 15, 2000) (not selected for publication).

2. Section 39–2–109, 11 C.R.S. (2000), authorizes the Property Tax Administrator,

   To prepare and publish from time to time manuals, appraisal procedures, and instructions, after consultation with the advisory com-

mittee to the property tax administrator and the approval of the state board of equalization, concerning methods of appraising and valuing land, improvements, personal property, and mobile homes and to require their utilization by assessors in valuing and assessing taxable property.

   § 39–2–109(1)(e).

3. The record indicates that in certain instances more than one schedule was filed for a county to account for the different special taxing districts in which a particular taxpayer's property was located.

Denver and Montezuma county assessors to reduce the assessed value of taxable personal property in each case to amounts based on a business-location formula.

For tax year 1998, the Montezuma County Assessor assigned a value of $220,950 to the taxable personal property of Petitioner TCI, which included satellite receiving dishes, converter boxes, and remote controls located at its customers' homes throughout the county. Although the aggregate value of the property owned by TCI within Montezuma County was determined to be $220,950, when itemized by business location—in that case each individual customer's home—no itemized amount exceeded $2,500. Because the board of assessment appeals concluded that the Property Tax Administrator's decision to adopt the business-location formula for applying section 39-3-119.5's personal property tax exemption was binding, the board ordered the assessor for Montezuma County to reduce the value of TCI's taxable personal property in the county to zero.

The decisions of the board of assessment appeals in the other three cases, all involving appeals from decisions of the Denver County Board of Equalization, produced similar reductions in the assigned values of the respective taxpayers' taxable personal property. The value of Petitioner BFI's taxable personal property, which included a number of waste disposal containers, was reduced from $934,384.00 to $119,274.00 for tax year 1998. The value of Petitioner Coca–Cola's taxable personal property, which included vending machines located throughout Denver County, was reduced from $3,325,505.00 to $1,513,360.00 for tax year 1998. Finally, the value of Petitioner Coors' taxable property, which included signs and beer kegs, was reduced from $498,562.00 to $213,341.00.

The counties appealed the decisions of the board of assessment appeals to the court of appeals, and the Property Tax Administrator, Mary Huddleston, intervened. Relying in part on the language of the statutory exemption and in part on the legislative history surrounding its enactment, the court of appeals in the lead case of *TCI Satellite Entertainment Inc. v. Bd. of Equalization,* 9 P.3d 1179 (Colo.App.2000), reversed the board of assessment appeals' decision. Although the court of appeals did not attempt to specify which property must be reported on a single personal property schedule, it held that the statute did not permit separate exemptions for each customer location housing no more than $2,500 of TCI's property, where TCI did not actually file separate schedules for each customer location but listed its otherwise non-exempt personal property at multiple locations on a single schedule. *Id.* at 1182. In three unpublished opinions, another panel of the court of appeals found *TCI Satellite Entertainment* dispositive.

## II.

This court granted writs of certiorari in each of the four cases to review the court of appeals' construction of the statute.[4] Although the language of section 39-3-119.5 is not, in and of itself, entirely free from ambiguity, when read in conjunction with the entire tax scheme and the General Assembly's apparent purpose in creating the exemption, there can be little doubt that the provision merely exempts a taxpayer's otherwise non-exempt personal property in a par-

4. This court actually granted certiorari to decide the following issues:
    (1) Whether the court of appeals erred when it reversed a decision by the State of Colorado Board of Assessment Appeals ("Board") that had held that the exemption found in Colorado Revised Statutes section 39-3-119.5 must be applied separately to each business location at which a taxpayer owns taxable property.
    (2) Whether the Property Tax Administrator's interpretation that section 39-3-119.5, 11 C.R.S. (1998) should be applied on a "per business location" basis by the assessors of this state is consistent with Article X, section 20(8)(b) of the Colorado Constitution, which provides for the exemption of personal property.
Because we affirm the judgments of the court of appeals and reject the Property Tax Administrator's proffered construction of section 39-3-119.5, it is unnecessary to address the second issue for which certiorari was granted.

ticular county if the aggregate value of such property does not exceed $2,500.

■ Section 39–3–119.5 exempts personal property of businesses from taxation "if the personal property would otherwise be listed on a single personal property schedule and the actual value of such personal property is two thousand five hundred dollars or less." § 39–3–119.5.[5] Although the statutory exemption is limited to property valued at or below § 2,500, it is not structured to excuse from taxation the first $2,500 of a taxpayer's qualifying property. Instead, it exempts a parcel or particular quantity of property, in its entirety, if that property meets two conditions. To qualify for the exemption, the subject property must be personal property that would be listed on a single schedule but for the exemption created by this section, and it must be personal property valued at or below $2,500. If the subject property does not satisfy both conditions, no portion of it is entitled to exemption from taxation under this provision.

The two conditions are, however, not separate and unrelated. The first condition describes property that is grouped or related as a set by an existing reporting requirement for *taxable* personal property. But for the exemption provided by this section, the property must be taxable property that would have to be listed on a single personal property schedule. By use of the term "such property," the second condition clearly specifies the maximum value that this set of otherwise taxable property may have and still qualify for the exemption. The first condition therefore defines the bundle or amount of property that will be exempt if, but only if, its entire value does not exceed the amount specified in the second condition. The language of subsection 119.5, however, does not delineate the taxable personal property that must be listed on a single schedule.

■ Statutes should not be read in isolation but together with all other statutes relating to the same subject or having the same general purpose, to the end that a statute's intent may be ascertained and absurd consequences avoided. *Colo. Dep't of Revenue v. Cray Computer Corp.*, 18 P.3d 1277, 1281 (Colo.2001); *Walgreen Co. v. Charnes*, 819 P.2d 1039, 1043 (Colo.1991); *Colorado–Ute Elec. Ass'n, Inc. v. Pub. Utils. Comm'n*, 760 P.2d 627, 635 (Colo.1988). This is especially true where a statute intimates by its plain language an intent to incorporate other statutory provisions. *See Colo. Common Cause v. Meyer*, 758 P.2d 153, 162 (Colo. 1988) (noting that the meaning attributed to words or phrases found in one part of a statute should be ascribed consistently to the same words or phrases throughout the statute, absent any manifest indication to the contrary). By expressly reserving the exemption for property that would otherwise be listed on a "single personal property schedule," section 39–3–119.5 evinces an intent to incorporate the provisions of article 5 that specify the content of such a schedule.

Article 5 imposes a duty on the county assessor to list all taxable personal property located within his county, § 39–5–101, and in furtherance of that duty, it requires that "[a]ll taxable personal property shall be listed on a form of schedule approved by the administrator and prepared and furnished by the assessor," § 39–5–107(1). The form of the schedule is left to the Administrator, but the contents of the schedule, including specific identifying information and the location and general description of the owner's taxable personal property, are mandated by statute. *Id.* While the words "all taxable property" could be understood to require even broader disclosure on the schedule furnished by the assessor, the very next section, § 39–5–108, entitled "Schedule sent to taxpayer return," specifies that "[s]uch person or his or her agent shall list in such schedule all taxable personal property owned by him or her, or in his or her possession, or under his or her control *located in said county.*" (Emphasis added). The declaration that must be "subjoined to such schedule" also

---

**5. Personal property—exemption.** For property tax years commencing on and after January 1, 1997, personal property not otherwise exempt from property tax shall be exempt from the levy and collection of property tax if the personal property would otherwise be listed on a single personal property schedule and the actual value of such personal property is two thousand five hundred dollars or less.

affirms the owner's belief that the schedule "sets forth a full and complete list of all taxable personal property owned by [him], or in [his] possession, or under [his] control, located in ... county, Colorado." § 39–5–107(2).

While the statutes do not expressly prohibit the assessor from furnishing, or the property owner from returning, more than one schedule, the provisions of article 5 refer to the taxpayer's returned listing of all personal property in the county as his personal property schedule. *See, e.g.,* § 39–5–110 (whenever taxable personal property brought from outside the state into any county, owner shall list property on "the personal property schedule sent to the taxpayer pursuant to section 39–5–108."); § 39–5–113 (statement of movable property to be included by owner in "his personal property schedule"); § 39–5–113.3 (works of art to be indicated by owners in statement accompanying "their personal property schedule"); § 39–5–114 (personal property not specifically classified on "the personal property schedule" to be noted therein); § 39–5–118 (valuation not invalid if assessor fails to receive "the personal property schedule required to be completed" and returned to him).

Although subsection 116 refers to "one or more" personal property schedules in providing for extensions and penalties for failures to file, it does not offer a reason (other than as copies or successive mailings in the absence of a response) for providing a taxpayer with more than one schedule. In any event, subsection 116 does not purport to alter the requirements of sections 39–5–107 and 108, that all personal property in the county be listed on the taxpayer's schedule, or delegate to the Administrator matters beyond the form of the schedule.

■ The position of Property Tax Administrator derives its authority both from con-

stitution and statute. Colo. Const., art. X, § 15; § 39–2–109. It was created in order to oversee the administration of the property tax valuation system and insure its uniformity throughout the state. *Huddleston v. Grand County Bd. of Equalization,* 913 P.2d 15, 17 (Colo.1996). To that end, the Property Tax Administrator is charged with approving the form and size of all personal property schedules and furnishing manuals to assessors concerning the appraisal and valuation of various types of property.[6] § 39–2–109. Although the line between matters of form and substance is not always distinct, and methods of implementation and valuation clearly can have an impact on tax obligations, a delegation to the Property Tax Administrator of the amount of property to be reported on a personal property schedule would amount to nothing less than a delegation of the amount of personal property tax exemption.

■ Although the property tax administrator's interpretations of statutes reflected in its manuals are entitled to deference, courts are not bound by such interpretations, particularly when the law has been misapplied or misconstrued. *See Huddleston v. Grand County Bd. of Equalization,* 913 P.2d 15, 17 (Colo.1996); *El Paso County Bd. of Equalization v. Craddock,* 850 P.2d 702, 704–05 (Colo.1993). Furthermore, agency interpretations that contravene legislative intent are not entitled to deference. *See Tivolino Teller House, Inc. v. Fagan,* 926 P.2d 1208, 1215 (Colo.1996); *Colo. Dep't of Revenue v. Woodmen of the World,* 919 P.2d 806, 817 (Colo.1996). Whether or not a delegation of the amount of the personal property tax exemption would be within the discretion of the legislature, exercise of the power authorized by such a delegation would be consistent with neither the authority given the Property Tax Administrator nor the language of the exemption.

**6.** The Property Tax Administrator's authority derives primarily from section 39–2–109, which provides in part:

(d) To approve the form and size of all personal property schedules, forms, and notices furnished or sent by assessors to owners of taxable property, ... and to require exclusive use of such approved schedules ... by all assessors to insure uniformity;

(e) To prepare and publish from time to time manuals, appraisal procedures, and instructions, after consultation with the advisory committee to the property tax administrator and the approval of the state board of equalization, concerning methods of appraising and valuing land, improvements, personal property, and mobile homes and to require their utilization by assessors in valuing and assessing taxable property....

Quite apart from the merits of the per-business-location formula prescribed by the Property Tax Administrator, the committee comments of the bill's sponsors make clear that at least they did not understand the statute to leave the applicability or amount of the exemption unresolved. The exemption was justified as a way to reduce the number of property tax returns filed across the state and relieve both taxpayers and government of the burden and inconvenience of completing the accompanying paperwork, without substantially affecting tax revenue. *See* Hearings on H.B. 96–1267 Before the House Committee on Finance, 60th General Assembly, Second Regular Session (Feb. 8, 1996) (statement of Rep. Lamborn). In addition to using small business taxpayers as examples of those who would benefit, the sponsors made representations about the minimal fiscal impact that the exemption would have.[7] Such projections would have been impossible if the amount of exempt property and number of exemptions per taxpayer were left to the choice of the administrator or individual taxpayer, no matter how rational those choices might be.

Without a fixed standard for determining the quantity of property being evaluated, the legislature's assignment of a maximum value of $2,500 for exempt property would have been similarly meaningless. Virtually any personal property could become exempt if the amount of it being evaluated on a single schedule were sufficiently reduced. If the matter were left entirely to the discretion of the Administrator, rather than a separate schedule for personal property at each business location, the Administrator would presumably be free to require separate schedules for each individual item of personalty, or even each component part of each item. Nothing in the statute limits the Administrator from organizing or even dividing personal property schedules for efficiency or convenience. The statute does, however, contemplate that all listings of personal property owned by a single taxpayer in a single county will be treated as a single schedule. Proliferation of schedules to be filed, with the concomitant effect of reducing the amount of property reported per schedule, thereby increasing the need for exemptions to reduce paperwork, would be nothing more than a formula for revenue reduction that would clearly run counter to the legislative purposes supporting the exemption.

III.

Although section 39–3–119.5 does not specify which property must be included on a "single personal property schedule," other provisions found within Title 39 clarify that such a schedule includes all of a taxpayer's personal property located within a county. Furthermore, both the legislative history surrounding section 39–3–119.5 and the nature of the statutory authority conferred upon the Property Tax Administrator support application of the exemption in relation to all personal property owned within a county, rather than the personal property located at each distinct business location. The judgments of the court of appeals are therefore affirmed.

---

7. In addition to representations of sponsors, a fiscal impact statement supporting House Bill 96–1267 calculated, on a per-county basis, a total loss of revenue of approximately $1.7 million. In contrast, a similar fiscal impact statement employing the business-location formula, produced after the Administrator's revised interpretation of section 39–3–119.5, calculated an estimated loss of revenue of $4.2 million.