COLORADO COURT OF APPEALS                                    **2016COA177**

Court of Appeals No. 15CA1327
Boulder County District Court No. 12CV540
Honorable Judith L. LaBuda, Judge
Honorable Bruce Langer, Judge

Jared J. Przekurat, by and through his parent, co-guardian, co-conservator and next friend, Jerome Przekurat,

Plaintiff-Appellant,

v.

Christopher Torres, Samuel S. Stimson, Peter Stimson, and Mitchell Davis,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE BERGER
Terry and Booras, JJ., concur

Announced December 1, 2016

Ciccarelli & Associates, P.C., A. Troy Ciccarelli, Littleton, Colorado; The Fowler Law Firm, LLC, Timms R. Fowler, Fort Collins, Colorado, for Plaintiff-Appellant

Hall & Evans, L.L.C., Alan Epstein, Denver, Colorado; Ray Lego & Associates, Thomas E. Hames, Greenwood Village, Colorado, for Defendant-Appellee Christopher Torres

Prendergast & Associates, P.C., Paul A. Prendergast, Littleton, Colorado, for Defendants-Appellees Samuel S. Stimson and Peter Stimson

Campbell, Latiolais & Averbach, LLC, Colin C. Campbell, Kirsten M. Dvorchak, Denver, Colorado, for Defendant-Appellee Mitchell Davis

¶ 1    In 2005, the General Assembly amended the Colorado Dram Shop Act, section 12-47-801, C.R.S. 2016, to impose civil liability not only when a social host knowingly served alcoholic beverages to a person under the age of twenty-one, but also when the social host "knowingly provided the person under the age of twenty-one a place to consume an alcoholic beverage." § 12-47-801(4)(a)(I); *see* Ch. 282, sec. 6, § 12-47-801, 2005 Colo. Sess. Laws 1244-45.  No Colorado appellate court has addressed the meaning of the 2005 amendments; this case requires us to do so.

¶ 2    Plaintiff, Jared J. Przekurat, was severely injured after Hank Sieck drove Przekurat's car home from a party and was involved in a catastrophic single-car accident.  Sieck was highly intoxicated at the time of the accident and was under the age of twenty-one.

¶ 3    Przekurat claimed that the four hosts of the party, defendants Christopher Torres, Samuel S. Stimson, Peter Stimson, and Mitchell Davis (the hosts), were liable for his damages under the 2005 amendments to the Dram Shop Act because the hosts "knowingly provided [Sieck] a place to consume an alcoholic beverage."  In granting the hosts' summary judgment motion, the district court rejected Przekurat's expansive interpretation of the 2005

1

amendments and determined that Przekurat failed to establish that there were disputed issues of material fact on whether any of the hosts knew that Sieck was under the age of twenty-one or that he was drinking alcohol at the party.

¶ 4    We conclude that the trial court correctly construed the 2005 amendments and also correctly determined that Przekurat failed to demonstrate a disputed issue of material fact regarding the hosts' knowledge that Sieck was underage and was drinking at the party. Accordingly, we affirm the summary judgment in favor of the hosts.

¶ 5    While we agree with Przekurat that the district court erred in denying on jurisdictional grounds his motion for reconsideration of summary judgment, that error does not require reversal or a remand.

I.  Relevant Facts and Procedural History

¶ 6    The hosts shared a house in Boulder.  To celebrate Davis' twenty-fourth birthday and Torres' graduation from college, they planned a party at the house.  The hosts invited numerous people to the party, hired a disc jockey, and provided two kegs of beer. Although the witnesses' testimony varied regarding the number of

attendees at the party, it appears that at various times, between twenty to more than one hundred people attended.

¶ 7     Among the attendees were Przekurat, who was twenty-one years old at the time, and Sieck, who was twenty years old.  Sieck did not know any of the hosts, but was invited to the party by his friend, Victor Mejia, who in turn had been invited not by one of the hosts, but by another person who was also involved in planning the party.  The only indication that Sieck interacted with any of the hosts that night came from Mejia's deposition testimony, where he stated that he, Sieck, and some others encountered Torres in the kitchen of the house where the party was taking place.  According to Mejia, Torres said to Mejia something like "I don't really know these other people, but I know you."  There was no evidence in the record that Sieck (or anyone else) ever told the hosts that Sieck was under the age of twenty-one.[1]

¶ 8     Sieck apparently drank substantial amounts of alcohol at the party.[2]  At approximately two o'clock in the morning, Sieck,

---

[1] There also was no evidence that Sieck, then twenty years old, obviously looked younger than twenty-one years old.
[2] While there was little evidence regarding the amount of alcohol that Sieck consumed at the party, forensic testing of his blood after

Przekurat, and Mejia left the party in Przekurat's car, which Sieck drove. Sieck drove at speeds in excess of one hundred miles per hour before losing control of the car, driving off of the road, and colliding with an embankment. The car rolled several times, ejecting Przekurat. All three occupants of the car survived the crash, but Przekurat sustained catastrophic injuries, including brain damage, which rendered him incompetent and he now requires around-the-clock care for the rest of his life.

¶ 9    Przekurat's father sued the hosts on Przekurat's behalf, alleging, as pertinent to this appeal, liability under section 12-47-801(4)(a)(I) of the Dram Shop Act.

¶ 10    After his pre-discovery summary judgment motion was denied, Torres renewed his motion for summary judgment following the completion of discovery. He asserted that no evidence showed that he knew Sieck was drinking in his home or that Sieck was

---

the accident showed that his blood alcohol content ranged between 0.090 and 0.129 grams of alcohol per 100 milliliters of blood, readings that exceed the legal limits for driving. § 42-1-102(27.5), C.R.S. 2016. It is also not clear from the record whether the alcohol Sieck drank at the party was supplied by the hosts or by another party guest. In view of our disposition, we need not address this question.

4

underage. The other three hosts moved for summary judgment on similar grounds.

¶ 11   Przekurat opposed the summary judgment motions, asserting that the hosts freely provided alcohol at the party, guests were invited without restriction, the hosts knew it was likely that people under the age of twenty-one would drink alcohol at the party, and many underage people drank alcohol at the party.

¶ 12   The district court granted summary judgment in favor of all the hosts, finding that there was no evidence "that Defendants had actual knowledge that Sieck was under the age of 21 and was either knowingly supplied alcohol by Defendants or knowingly allowed to consume alcohol on Defendants' property."

¶ 13   The court (with a different judge presiding) later denied Przekurat's motion to reconsider summary judgment not on the merits, but because it had been filed beyond the fourteen-day period prescribed by C.R.C.P. 59, thus supposedly depriving the court of jurisdiction.

## II. Interpretation of the "Social Host" Provision of the Colorado Dram Shop Act

¶ 14     Przekurat first argues that the district court erred when it held that section 12-47-801(4)(a)(I) of the Dram Shop Act requires actual knowledge of two separate elements: (1) that the defendant provided a place for the consumption of alcohol by a person under the age of twenty-one and (2) that the defendant knew that the person who consumed alcohol at that place was under the age of twenty-one. We hold that the district court correctly construed and applied the statute.

¶ 15     Statutory interpretation presents a question of law that we review de novo. *Build It & They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 304 (Colo. 2011). "When interpreting a statute, we must ascertain and effectuate the intent of the General Assembly." *Vanderborgh v. Krauth*, 2016 COA 27, ¶ 8. To do so, we look first to the statutory language, giving words and phrases their plain and ordinary meanings according to the rules of grammar and common usage. § 2-4-101, C.R.S. 2016; *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15.

¶ 16    "We read the language in the dual contexts of the statute as a

whole and the comprehensive statutory scheme, giving consistent,

harmonious, and sensible effect to all of the statute's language."

*Krol,* ¶ 15.  After doing this, if we determine that the statute is not

ambiguous, we enforce it as written and do not resort to other rules

of statutory construction.  *Id.*

¶ 17    In enacting the Dram Shop Act, section 12-47-801, the

General Assembly codified the common law rule that, except under

limited circumstances, the *consumption* of alcohol is the proximate

cause of injuries inflicted by an intoxicated person, not the

*provision* of alcohol to that person.  § 12-47-801(1); *Build It,* 253

P.3d at 307.  Section 12-47-801 also codifies the limited exceptions

to the general rule and thus provides the exclusive remedy for a

plaintiff injured by an intoxicated person against a provider of

alcoholic beverages.  *Build It,* 253 P.3d at 305.  As relevant here,

section 12-47-801(4)(a)(I) provides:

> No social host who furnishes any alcohol
> beverage is civilly liable to any injured
> individual . . . because of the intoxication of
> any person due to the consumption of such
> alcohol beverages, except when . . . [i]t is
> proven that the social host knowingly served
> any alcohol beverage to such person who was

7

under the age of twenty-one years or knowingly provided the person under the age of twenty-one a place to consume an alcoholic beverage[.]

¶ 18   To decide this case, we must determine whether the word "knowingly," which is not defined in the Dram Shop Act, applies to both the act of providing a place for a person to consume an alcoholic beverage and the age of the drinker, or, rather, as Przekurat contends, liability is established by proof only that the social host provided a "place to consume an alcoholic beverage" without regard to the social host's knowledge of the age of the drinker.

¶ 19   To decide this question, we look to the plain language of the 2005 amendments as well as to this court's decision in *Dickman v. Jackalope, Inc.*, 870 P.2d 1261 (Colo. App. 1994). While *Dickman* addressed the statutory phrase "willfully and knowingly" in the context of the liability of liquor licensees for injuries to a person who was served alcohol by the licensees, it is nevertheless instructive. The statute addressed in *Dickman* provides:

> No licensee is civilly liable to any injured individual or his or her estate for any injury to such individual or damage to any property suffered because of the intoxication of any

person due to the sale or service of any alcohol beverage to such person, except when . . . [i]t is proven that the licensee *willfully and knowingly* sold or served any alcohol beverage to such person who was under the age of twenty-one years or who was visibly intoxicated[.]

§ 12-47-801(3) (emphasis added).[3]

¶ 20    In *Dickman,* the plaintiff sued a bar for serving alcohol to a woman who was underage and who later injured him when she lost control of her car.  870 P.2d at 1262.  The evidence demonstrated that even though the bar employees did not ask for the woman's identification, they believed that the woman was over twenty-one years old.  *Id.*  The trial court determined that the plaintiff had not presented any evidence that the bar had "knowingly and willfully" served alcohol to the woman, and therefore granted summary judgment in favor of the bar.  *Id.*

¶ 21    The issue in *Dickman* was whether the mental state of "willfully and knowingly" applied to the person's age as well as the

---

[3] The liquor licensee liability provision in effect at the time that *Dickman v. Jackalope, Inc.,* 870 P.2d 1261 (Colo. App. 1994), was decided is substantively identical to the current liquor licensee provision.  *See* § 12-47-128.5(3), C.R.S. 1991 (repl. vol. 5B) (repealed 1997).  The language relevant to this case, "willfully and knowingly," did not change.

provision of alcohol, or whether the plaintiff was only required to prove that the licensee "knowingly and willfully" served alcohol to an underage person, regardless of whether the licensee knew that that person was underage. *Id.* To resolve the question, the court applied the rule that when a criminal statute prescribes a culpable mental state, that mental state applies to every element of the offense unless the statute provides otherwise. *Id.* (citing section 18-1-503(4), C.R.S. 2016). The court affirmed the summary judgment, holding that under the plain language of the statute, a liquor licensee may be held liable for serving alcohol to someone under the age of twenty-one only if "the licensee knows that he or she is serving alcohol to a person under 21 years of age." *Id.*

¶ 22    Przekurat argues that we should not rely on *Dickman* because it preceded the 2005 amendments and, in any event, is inapposite because it interpreted the phrase "willfully and knowingly" and not "knowingly" alone. For three reasons, we reject these arguments.

¶ 23    First, when the General Assembly amends a statute, we presume that it is aware of published judicial precedents construing the prior version of the statute. *Vaughan v. McMinn*, 945 P.2d 404, 409 (Colo. 1997). *Dickman* was decided prior to the 2005

amendments, and thus the legislature is presumed to have known of the construction of the statute in *Dickman.* Nothing in the language of the 2005 amendments reflects a legislative intent to overrule *Dickman.*

¶ 24    Second, *Dickman* compels the conclusion that the statutory requirement of "knowingly" applies to all of the elements of liability under the 2005 amendments. *Huddleston v. Bd. of Equalization,* 31 P.3d 155, 159 (Colo. 2001) (citing *Colo. Common Cause v. Meyer,* 758 P.2d 153, 162 (Colo. 1988)). We think that *Dickman* was correctly decided, and we adopt its reasoning here.

¶ 25    Third, the fact that the General Assembly removed the word "willfully" from subsection (4)(a)(I) when it enacted the 2005 amendments simply has no bearing on whether the word "knowingly," which remains in the statute, applies to all of the elements of liability under the statute.[4]

---

[4] The parties dispute the significance of the General Assembly's deletion of the word "willfully" from section 12-47-801(4)(a)(I), C.R.S. 2016. Relying on the legislative history of the 2005 amendments, the hosts suggest that the term "willfully" was removed for the sole purpose of preventing insurance companies from avoiding coverage of Dram Shop Act claims on a homeowner's insurance policy. *See Hearing on H.B. 1183 Before the H. Judiciary Comm.,* 65th Gen. Assemb., 1st Reg. Sess. (Feb. 17, 2005)

11

¶ 26    We thus conclude that, just as the "knowingly" mental state applies to knowledge of the age of the person in section 12-47-801(3)(a)(I), it also applies to knowledge of the age of the person in section 12-47-801(4)(a)(I).  Therefore, to satisfy his summary judgment burden, Przekurat was required to present evidence that the hosts had actual knowledge that Sieck was underage and was drinking at the party.  But he failed to do so.

¶ 27    Instead, Przekurat relies on legislative history and an affidavit from the House Bill 05-1183 sponsor to argue that the 2005 amendments were intended to impose liability on social hosts who throw an "uncontrolled" party where it is likely that underage people will drink, without regard to the defendant's knowledge of the age of the drinker.  *See Hearing on H.B. 1183 before the H. Judiciary Comm.*, 65th Gen. Assemb., 1st Reg. Sess. (Feb. 17, 2005) (statement of Rep. Angie Paccione).  But we may not resort to legislative history unless the statute is ambiguous.  *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010).

(statement of Rep. Angie Paccione).  In view of our conclusion that the language of the 2005 amendments is clear and unambiguous, we do not address the legislative purpose for removal of the word "willfully" from the Dram Shop Act.

12

¶ 28    Here, as we have concluded above, the language of the statute is clear and unambiguous.  While we agree that the 2005 amendments expanded social host liability, the plain language of the statute requires that a social host must *knowingly provide the person under the age of twenty-one* a place to consume alcohol. § 12-47-801(4)(a)(I).  Furthermore, affidavits of former legislators regarding their personal views of what a particular piece of legislation meant or what the legislature intended it to mean are not competent evidence to determine legislative intent, even when legislative intent is properly considered.  *Bread Political Action Comm. v. Fed. Election Comm'n*, 455 U.S. 577, 582 n.3 (1982).

¶ 29    For these reasons, we conclude that the district court correctly applied the 2005 amendments.  To the extent that Przekurat argues that the Dram Shop Act should impose liability on a social host who provides a venue but does not have knowledge that specific underage persons are drinking at the venue, that is a matter of policy that must be addressed to the General Assembly, not the courts.  *Loar v. State Farm Mut. Auto. Ins. Co.*, 143 P.3d 1083, 1087 (Colo. App. 2006).

### III. Summary Judgment

¶ 30    Przekurat next argues that the district court's summary judgment must be reversed because he offered "abundant" evidence that the hosts knew that they were hosting an "open" party and providing a venue to underage guests, including Sieck, to drink indiscriminately. Because the summary judgment record does not support Przekurat's contention, we reject it.

¶ 31    We review summary judgments de novo. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo. 2007). Summary judgment is a drastic remedy appropriate only when the pleadings and supporting documents show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved in favor of the nonmoving party. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988). Once the moving party has met this burden, the burden shifts to the nonmoving party to establish a triable issue of fact. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712-13 (Colo. 1987).

¶ 32    As we held in Part II of this opinion, to impose liability under section 12-47-801(4)(a)(I) of the Dram Shop Act, a social host must have actual knowledge both that he has provided a place to consume an alcoholic beverage and that the person consuming the beverage at that place is under the age of twenty-one.

¶ 33    In their motions for summary judgment, the hosts presented legally admissible evidence to prove that none of them knew Sieck, knew that he was drinking at the party, or knew that he was underage.  The supporting evidence consisted of the following:

- Sieck testified in his deposition that he did not know and had never met any of the hosts; he was not invited to the party by any of the hosts; he had never been to the hosts' home prior to the night of the party; and he did not tell anyone at the party that he was underage.

- Torres testified in his deposition that he did not ask any of the party attendees their age, and he swore in an affidavit that he did not know Sieck or know that Sieck had attended the party.

- Peter Stimson testified in his deposition that he did not know Sieck.

- Davis testified in his deposition that he did not know Sieck.

- Samuel Stimson swore in an affidavit that he did not know Sieck, had not invited Sieck to the party, and did not come into contact with Sieck at the party.

¶ 34   In response to this showing, Przekurat presented the following evidence:

- The hosts threw a party with between 30 and 120 attendees.

- Alcohol was freely available at this party.

- Access to the party was unrestricted.

- When Sieck entered the kitchen with a group of friends, including Mejia, Torres told Mejia, "I don't really know these other people, but I know you."

- The hosts knew that Samuel Stimson was underage and had planned to attend the party.

- The hosts did not ask party attendees their age or take any other steps to ensure that underage drinking would not take place at the party.

- Sieck, who was twenty years old at the time, drank alcohol at the party.

¶ 35    Przekurat argues here, as he did in the district court, that circumstantial evidence raised a genuine issue of material fact that "[the hosts] clearly had knowledge of the fact that there were underage people consuming alcohol that they served at their home." He also argues that the hosts had "constructive knowledge" that Sieck was underage and that they had provided a place for him to drink alcohol, and that constructive knowledge is sufficient to establish the statutory requirement of "knowingly."

¶ 36    For two reasons, we agree with the district court that this evidence was insufficient to meet Przekurat's summary judgment burden.

¶ 37    First, while we agree with Przekurat that circumstantial evidence is admissible to prove knowledge under the statute, *Christoph v. Colo. Commc'ns Corp.*, 946 P.2d 519, 523 (Colo. App. 1997), Przekurat did not offer any evidence, circumstantial or direct, that would permit a reasonable inference that any of the

hosts knew Sieck, much less that they knew his age.[5]  And

Przekurat did not present any evidence that the twenty-year-old

Sieck appeared to be obviously underage.  Without knowledge,

established either by direct or circumstantial evidence, of Sieck's

age, the hosts could not have knowingly provided Sieck, a person

under the age of twenty-one, with a place to consume alcohol.

¶ 38      Second, constructive knowledge, or evidence that a person

"should have known" of a condition or circumstance, *Full Moon

Saloon, Inc. v. City of Loveland ex rel. Local Liquor Licensing Auth.*,

111 P.3d 568, 570 (Colo. App. 2005), does not satisfy the mental

state requirement of "knowingly" in section 12-47-801(4)(a)(I).

¶ 39      The supreme court's decision in *Build It & They Will Drink*

compels this conclusion even though the court was addressing

licensee liability under the Dram Shop Act rather than social host

liability.  There, the supreme court squarely held that section

---

[5] The district court's order did not prohibit the use of circumstantial evidence to establish whether the hosts had actual knowledge of the required circumstances under the 2005 amendments.  Przekurat appears to conflate circumstantial evidence with constructive knowledge.  They are not the same thing.  *See People v. Parga*, 964 P.2d 571, 573 (Colo. App. 1998) (holding that jury instructions were defective because they allowed the jury to convict the defendant based on his *constructive* knowledge when the statute required *actual* knowledge, established by direct or circumstantial evidence).

12-47-801(3), which provides that a liquor licensee must "willfully and knowingly" serve an underage or intoxicated person to be liable, requires proof that the licensee had "actual knowledge" of a person's age or intoxicated state. 253 P.3d at 308. According to the court, "[i]t would not be enough that the licensee 'should have known' that the person was visibly intoxicated [or underage]." *Id.*

¶ 40 Because "the meaning attributed to words or phrases found in one part of a statute should be ascribed consistently to the same words or phrases throughout the statute," we must apply the same meaning of the word "knowingly" here. *Huddleston*, 31 P.3d at 159 (citing *Colo. Common Cause*, 758 P.2d at 162).

¶ 41 We also reject Przekurat's assertion that *Full Moon Saloon* is dispositive of whether constructive knowledge satisfies the requisite mental state of section 12-47-801(4)(a)(I). Even if a Colorado Court of Appeals decision could overcome the holding of a Colorado Supreme Court case, which it obviously cannot, that case involved an entirely different statute, section 12-47-901, C.R.S. 2016, which makes it unlawful for any person to "permit" the sale or service of alcohol to a person under the age of twenty-one. This court held that a liquor licensee "permit[s]" that prohibited conduct if he or she

has actual knowledge or constructive knowledge that it is occurring. *Full Moon Saloon*, 111 P.3d at 570. One of the reasons that the court concluded that constructive knowledge is sufficient was because "[t]he holder of a liquor license has an 'affirmative responsibility' to conduct the business, and see that his or her employees conduct the business, in compliance with the law." *Id.*

¶ 42 But, unlike section 12-47-901, the social host provision of the Colorado Dram Shop Act does not impose any comparable "affirmative responsibility," and it does not impose liability for "permitting" an underage person to consume alcohol.

¶ 43 For these reasons, we conclude that while the hosts met their summary judgment burdens, Przekurat did not meet his, and the district court correctly granted summary judgment in favor of the hosts on Przekurat's social host liability claim.

## IV. Przekurat's Motion for Reconsideration of Summary Judgment

¶ 44 Przekurat next argues that the district court erred in concluding that it did not have jurisdiction to rule on his motion for reconsideration of summary judgment in favor of the hosts. We agree that the district court erroneously denied the C.R.C.P. 59

motion for lack of jurisdiction, but we nevertheless conclude that the error does not require either reversal or a remand.

## A. Additional Procedural History

¶ 45     In his amended complaint, Przekurat asserted claims against an additional defendant, Robert Fix, who is not a party to this appeal. At the time that the district court granted summary judgment in favor of the hosts, Przekurat's claims against Fix had not yet been resolved. No C.R.C.P. 54(b) order was ever entered with respect to the summary judgment in favor of the hosts.

¶ 46     The district court later granted summary judgment in favor of Fix. Przekurat moved for reconsideration of that order, and the district court (with a different judge presiding) reversed its earlier ruling as to Fix.

¶ 47     Przekurat then settled his claims against Fix, and the district court dismissed those claims. That same day, which was more than one year after the court granted summary judgment in favor of the hosts, Przekurat moved for reconsideration of the summary judgment in favor of the hosts. The district court denied the motion, concluding that it had not been filed within the fourteen

21

days prescribed by C.R.C.P. 59 and that therefore, the court did not have jurisdiction to consider the motion.

B. Analysis

¶ 48     "Within 14 days of entry of judgment as provided in C.R.C.P. 58," a party may move to amend the judgment under C.R.C.P. 59(a)(4).  Failure to file the motion within the time allowed by C.R.C.P. 59(a) deprives the court of jurisdiction to act under that rule.  *In re Marriage of McSoud,* 131 P.3d 1208, 1212 (Colo. App. 2006).

¶ 49     Przekurat argues that, contrary to the district court's conclusion, the time for him to file a motion for reconsideration under C.R.C.P. 59 began to run when there was a final judgment, which resulted only when the district court dismissed the claims against Fix.

¶ 50     There are two types of motions for reconsideration.  The first is a motion for reconsideration of an interlocutory order under C.R.C.P. 121, section 1-15(11), which provides, in relevant part: "Motions to reconsider interlocutory orders of the court, *meaning motions to reconsider other than those governed by C.R.C.P. 59 or 60,* are disfavored."  (Emphasis added.)  Thus, that rule authorizes the

22

filing of a motion to reconsider a non-final order or judgment. Until the entry of final judgment, any order or judgment entered by the court is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." C.R.C.P. 54(b).

¶ 51 The second type is a motion for reconsideration of a final order or judgment under C.R.C.P. 59. *In re Marriage of Warner*, 719 P.2d 363, 364-65 (Colo. App. 1986).

¶ 52 As noted, Rule 59(a) provides that "[w]ithin 14 days of *entry of judgment as provided in C.R.C.P. 58* . . . a party may move for post-trial relief[.]" (Emphasis added.) C.R.C.P. 58 states that "[t]he term 'judgment' includes an appealable decree or order as set forth in C.R.C.P. 54(a)." C.R.C.P. 54(a) provides that "'[j]udgment' as used in these rules includes a decree and order to or from which an appeal lies."

¶ 53 Reading these provisions together, a C.R.C.P. 59 motion may only be filed to challenge a final order or judgment, not a non-final or interlocutory order or judgment.

¶ 54 Our reading of C.R.C.P. 59(a) is supported by the Tenth Circuit's construction of the similar provision of Fed. R. Civ. P.

59(e). *Garcia v. Schneider Energy Servs., Inc.*, 2012 CO 62, ¶ 7 (stating that an appellate court may rely on federal precedents interpreting similar federal rules in interpreting the Colorado Rules of Civil Procedure).

¶ 55    The timing provision of Fed. R. Civ. P. 59(e), which states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment," is, for relevant purposes, substantively similar to C.R.C.P. 59(a). The Tenth Circuit held that the time for filing a motion under Fed. R. Civ. P. 59 begins to run only upon entry of a *final* judgment, not an interlocutory order. *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988).

¶ 56    Until the claims against Fix were dismissed, the summary judgment entered in favor of the hosts was not a final order or judgment and thus was not subject to challenge by a motion under C.R.C.P. 59. Instead, it was subject to modification by the court at any time, either on motion of the parties or on the court's own motion. C.R.C.P. 54(b); *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1125 n.2 (Colo. 1982).

¶ 57    Once the summary judgment in favor of the hosts became final, which it did upon the dismissal of the claims against Fix,

Przekurat had fourteen days to file a C.R.C.P. 59 motion directed to that judgment. Przekurat timely filed his C.R.C.P. 59 motion, and thus the district court erred when it denied the motion based upon lack of jurisdiction.

¶ 58 But this error does not require either reversal or a remand for consideration of the motion for reconsideration. Except for testimony that at one point there may have been as few as twenty people at the party, Przekurat's motion for reconsideration did not advance any factual or legal argument beyond what he had presented in his original response to the hosts' motions for summary judgment. To the extent that Przekurat's motion for reconsideration presented additional evidence regarding the size of the party, that evidence, by itself, does not change the summary judgment calculus. Without direct or circumstantial evidence that the hosts knew that Sieck was drinking at the party and was under the age of twenty-one, Przekurat could not meet his summary judgment burden.

¶ 59 Moreover, in the absence of a claim of newly discovered evidence, which was not asserted here, evidence submitted after the grant of summary judgment cannot properly be considered by the

district court. *Schmidt v. Frankewich*, 819 P.2d 1074, 1078 (Colo. App. 1991) (citing *Conrad v. Imatani*, 724 P.2d 89, 94 (Colo. App. 1986)).

¶ 60 Nor does the district court's reversal of its initial grant of summary judgment in favor of Fix affect our analysis. That order reversing the prior grant of summary judgment was based on evidence specific to Fix: Fix knew Sieck prior to the party and talked with Sieck at the party; Fix invited Mejia to the party, and Mejia invited Sieck; Fix knew that Mejia was underage and was a friend of others who were underage; and there may have been as few as twenty party attendees, increasing the likelihood that Fix was aware that Sieck — a person he had met before — was at the party. Other than raising an issue about the size of the party, which we addressed above, none of this evidence established a disputed issue of material fact as to the hosts.[6]

## V. Cost Awards

¶ 61 Because we affirm the summary judgment, we also affirm the cost awards to Peter Stimson, Samuel Stimson, and Torres. *Rocky*

---

[6] Given our resolution of this issue, we necessarily reject the hosts' contention that Przekurat engaged in improper judge shopping when he filed his C.R.C.P. 59 motion.

*Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 2016 COA 33, ¶ 67.

## VI. Appellate Attorney Fees

¶ 62 Peter Stimson and Samuel Stimson request appellate attorney fees and single or double costs pursuant to C.A.R. 38(b) and section 13-17-103, C.R.S. 2016, both of which grant an appellate court discretion to impose attorney fees against a party who has brought or defended a frivolous action. *Mission Denver Co. v. Pierson*, 674 P.2d 363, 366 (Colo. 1984). Przekurat made "coherent assertion[s] of error" and supported his arguments with legal authority. *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006). Therefore, his appeal was not frivolous and we deny Peter Stimson's and Samuel Stimson's requests for appellate attorney fees and double costs. They are entitled to costs as the prevailing party on appeal pursuant to C.A.R. 39.

## VII. Conclusion

¶ 63 The summary judgment in favor of the hosts and the award of costs are affirmed.

JUDGE TERRY and JUDGE BOORAS concur.